PREPARED BY AND WHEN RECORDED RETURN TO:
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Attn: Hercules W. Grigos, Esq.
215-569-2700

OPA #: 884018956; 884018959

# PIER VILLAGE,
# A PLANNED COMMUNITY

# DECLARATION OF PLANNED
# COMMUNITY

1121-41 N. Delaware Ave.
Philadelphia, PA
Dated: _OCTOBER 11_, 2019

## TABLE OF CONTENTS

Article I ........................................................................................................... 1

The Property .................................................................................................... 1

   Section 1.01. The Property ........................................................................... 1

Article II .......................................................................................................... 1

Submission of Property to ................................................................................. 1

Uniform Planned Community Act ....................................................................... 1

   Section 2.01. Submission of Property ............................................................ 1

Article III ......................................................................................................... 1

Certain Definitions ........................................................................................... 1

   Section 3.01. Certain Definitions .................................................................. 1

Article IV ......................................................................................................... 4

Applicability ..................................................................................................... 4

   Section 4.01.  Applicability .......................................................................... 4

   Section 4.02.  Interpretation of Declaration and Bylaws ................................. 4

Article V .......................................................................................................... 4

Plats and Plans ................................................................................................. 4

   Section 5.01.  Plats and Plans ...................................................................... 4

Article VI ......................................................................................................... 5

Units ................................................................................................................ 5

   Section 6.01.  Number of Units .................................................................... 5

   Section 6.02.  Description of Units ................................................................ 5

Article VII ........................................................................................................ 5

Common Elements and Common Expenses ......................................................... 5

   Section 7.01.  Common Elements ................................................................. 5

   Section 7.02.  Construction and Transfer of Common Elements ...................... 5

   Section 7.03.  Use of Common Elements ....................................................... 6

   Section 7.04.  Maintenance and Repair of Common Elements ......................... 6

   Section 7.05.  Alteration to Common Elements By Unit Owner ....................... 7

   Section 7.06.  Common Expense Liability ..................................................... 7

   Section 7.07.  Amendment of Common Expense Liability Allocation ............... 7

   Section 7.08.  Conveyance or Encumbrance of Common Elements .................. 7

   Section 7.09.  Obsolescence ......................................................................... 8

   Section 7.10.  Limited Warranty for Community Facilities .............................. 8

PHIL1 7977019v.1

Article VIII ........................................................................................................................ 9

Limited Common Elements ............................................................................................... 9

Section 8.01.  Limited Common Elements ...................................................................... 9

Section 8.02.  Maintenance and Repair of Limited Common Elements .......................... 9

Article IX ........................................................................................................................... 9

The Association .................................................................................................................. 9

Section 9.01.  The Association ........................................................................................ 9

Section 9.02.  Membership in Association ...................................................................... 9

Section 9.03.  Certificate of Voting .............................................................................. 10

Section 9.04.  Executive Board ..................................................................................... 11

Section 9.05.  Budgets and Capital Expenditures ......................................................... 12

Section 9.06.  Actions Affecting the Declarant ............................................................ 12

Article X .......................................................................................................................... 12

Insurance .......................................................................................................................... 12

Section 10.01.  Liability ................................................................................................ 12

Section 10.02.  Property ................................................................................................ 13

Section 10.03.  General Insurance Provisions .............................................................. 13

Section 10.04.  Proceeds from Property Insurance ....................................................... 14

Section 10.05.  Disposition of Insurance Proceeds ....................................................... 14

Section 10.06.  Association's Power to Compromise Claim .......................................... 14

Section 10.07.  Other Insurance .................................................................................... 14

Section 10.08.  Limitation of Liability .......................................................................... 15

Section 10.09.  Use of Unit and Insurance Premiums ................................................... 15

Section 10.10.  Unit Owner Insurance .......................................................................... 15

Article XI ......................................................................................................................... 16

Easements and Declarant Rights ...................................................................................... 16

Section 11.01.  Utilities, Pipes and Conduits ............................................................... 16

Section 11.02.  Association and Executive Board Access ............................................. 16

Section 11.03.  Declarant's Offices, Models and Signs ................................................ 16

Section 11.04.  Declarant's Easement for Construction and Completion ....................... 16

Section 11.05.  Additional Easements .......................................................................... 17

Section 11.06.  Encroachment ....................................................................................... 17

Section 11.07.  Continuing Easements and Declaration Rights ..................................... 18

Section 11.08.   Submerged Lands License ................................................................... 18

PHIL1 7977019v.1

Article XII ................................................................................................................ 18

Assessment of Taxes ................................................................................................. 18

    Section 12.01. Assessment of Taxes .................................................................... 18

Article XIII ............................................................................................................... 18

Unit Owner Obligations ........................................................................................... 18

    Section 13.01. Assessment Obligation ................................................................ 18

    Section 13.02. Common Expense Allocation ...................................................... 19

    Section 13.03. Amount of Assessment ................................................................ 19

    Section 13.04. Time of Payment ......................................................................... 19

    Section 13.05. Effect of Non-Payment of Assessment ....................................... 20

    Section 13.06. Lien of Assessments ................................................................... 20

    Section 13.07. Method of Enforcing Collection of Assessments ........................ 20

    Section 13.08. Unpaid Assessments at the Time of Execution Sale Against a Unit ............... 20

    Section 13.09. Voluntary Sale of a Unit ............................................................. 21

    Section 13.10. Mortgage Foreclosure .................................................................. 21

    Section 13.11. Surplus Funds .............................................................................. 21

    Section 13.12. Damages; Cost of Enforcement ................................................... 21

    Section 13.13.  Declarant's Assessment Obligations ........................................... 22

    Section 13.14. Unit Owners' Negligence ............................................................ 22

    Section 13.15. Assignment of Assessments ........................................................ 22

    Section 13.16. CONFESSION OF JUDGMENT ............................................... 22

Article XIV ............................................................................................................... 23

Transfer and Lease of Units ..................................................................................... 23

    Section 14.01. Transfer of Units ......................................................................... 23

    Section 14.02. Leasing of Units .......................................................................... 23

Article XV ................................................................................................................ 24

Use Restrictions ....................................................................................................... 24

    Section 15.01. Non-Residential Uses .................................................................. 24

    Section 15.02. Subdivision or Partition .............................................................. 24

    Section 15.03. Residential Use ............................................................................ 24

    Section 15.04. Maintenance of Units ................................................................... 25

    Section 15.05. Above-Ground Utilities ............................................................... 25

    Section 15.06. Animals ........................................................................................ 25

    Section 15.07.  Outdoor Storage ......................................................................... 25

iv

Section 15.08. Motor Vehicles.................................................................................. 26

Section 15.09. Fencing............................................................................................. 26

Section 15.10. Exterior Changes/Additions to Dwelling and Outbuildings ............. 26

Section 15.11. Landscaping and Trees .................................................................... 27

Section 15.12. For Sale/For Rent Signs.................................................................. 27

Section 15.13. Declarant's Right to Maintain Models, Offices, Etc......................... 27

Section 15.14. Other Declarant Rights ................................................................... 27

Article XVI ................................................................................................................ 27

Compliance and Default ........................................................................................... 27

Section 16.01. Compliance and Default .................................................................. 27

Section 16.02. Hearing Procedures........................................................................ 28

Article XVII .............................................................................................................. 29

Indemnification of Officers, ..................................................................................... 29

Executive Board and Committee Members ............................................................. 29

Section 17.01. Indemnification of Officers, Executive Board and Committee Members ........ 29

Article XVIII ............................................................................................................. 29

Amendments ............................................................................................................ 29

Section 18.01.  Generally........................................................................................ 29

Section 18.02 Certain Amendments ........................................................................ 31

Section 19.01. Statute ............................................................................................. 31

Section 19.02. Destruction....................................................................................... 31

Section 19.03. By Agreement .................................................................................. 31

Section 19.04. General Provisions .......................................................................... 31

Article XX.................................................................................................................. 31

Notice ....................................................................................................................... 31

Section 20.01. Notice............................................................................................... 31

Article XXI ................................................................................................................ 32

Rights of Eligible Mortgagees ................................................................................. 32

Section 21.01. Eligibility .......................................................................................... 32

Section 21.02. Notices to Eligible Mortgagee ......................................................... 32

Section 21.03. Eligible Mortgagee Approval ........................................................... 32

Article XXII ............................................................................................................... 33

Miscellaneous Provisions ........................................................................................ 33

Section 22.01. Severability ...................................................................................... 33

v

Section 22.02. Exhibits ........................................................................................ 33

Section 22.03. Headings ...................................................................................... 33

Section 22.04. Effective Date ............................................................................. 33

Section 22.05. Binding Effect ............................................................................. 33

PHIL1 7977019v.1

# DECLARATION
# OF PIER VILLAGE,
# A PLANNED COMMUNITY

**THIS DECLARATION** (the "Declaration") is made this _11ᵗʰ_ day of _OCTOBER_ 2019 by 1121 Pier Village LLC, a Pennsylvania limited liability company and its successors, grantees and assigns other than ultimate Unit purchasers (herein called the "Declarant") with respect to the Property as defined below, and with respect to all other matters referred to herein.

## Article I
## The Property

**Section 1.01. The Property.** The Declarant is the equitable owner of the real estate addressed as 1121-41 N. Delaware Avenue located in the City and County of Philadelphia, Pennsylvania, as more fully described in Exhibit "A" (the "Legal Description") and depicted on plats and plans included as Exhibit "B" attached hereto (the "Plats and Plans"), together with the easements, rights and appurtenances belonging thereto (collectively, the "Property").

## Article II
## Submission of Property to
## Uniform Planned Community Act

**Section 2.01. Submission of Property.** Declarant hereby submits the Property, any improvements hereafter constructed thereon, and all easements, rights and appurtenances belonging thereto, to the provisions of the Pennsylvania Uniform Planned Community Act, Act No. 1996-180, as amended, (68 Pa. Cons. Stat. § 5101, et seq.) (herein called the "Act"), and Declarant hereby creates a planned community (the "Planned Community") pursuant to the Act.

## Article III
## Certain Definitions

**Section 3.01. Certain Definitions.** The following terms when used herein and in the Bylaws (hereinafter defined) are to be defined as set forth in this Section 3.01. Any term used herein, or in the Bylaws, which is not defined in this Section 3.01, but is defined in the Act, shall have the meaning set forth in the Act.

      a.     "Assessments" – means those levies, assessments or sums payable by one or more Unit Owners (hereinafter defined) from time to time as levied or assessed by the Association pursuant to this Declaration and the Bylaws. The term "Assessments" shall also include any other amounts that may be levied or assessed against a Unit Owner or a Unit, including, but not limited to, costs of collection, late charges, interest, fines, legal fees, penalties, and other expenses, like charges, fees or costs.

1

b.      "Association" – means the association of all Unit Owners within the Planned Community organized under Section 5301 of the Act, which will be a Pennsylvania non-profit corporation.

c.      "Bylaws" – means the governing regulations adopted pursuant to the Act and this Declaration, inter alia, for the regulation and management of the Association by the Executive Board, including such amendments as may be adopted from time to time.

d.      "City" – the City of Philadelphia, Pennsylvania.

e.      "Common Elements"– all portions of the Planned Community which are (or shall be) owned by or leased to the Association (other than the Units) and those facilities and components that are shown on Exhibit "B" attached ("Plats and Plans"), as amended from time to time.

f.      "Common Expenses" – all expenses incurred by or financial liabilities of the Association, together with any allocation for reserves, including, but not limited to:

(i)      Expenses of administration, management, operation, maintenance, repair, insurance and replacement of the Common Elements;

(ii)      Expenses or liabilities agreed upon as common by the Unit Owners; and

(iii)      Expenses designated as common by provisions of the Act, this Declaration or the Bylaws.

g.      "Costs of Collection" or "Costs of Enforcement" – consist of all expenses incurred by the Association in (i) collecting or attempting to collect any delinquent Assessments from any Unit Owner, (ii) enforcing by any legal means any lien for unpaid Assessments against any Unit, or (iii) enforcing or attempting to enforce any other provisions of this Declaration, the By-laws or the Rules and Regulations, at law or in equity, including, without limitation, court costs, attorney's fees and other expenses, whether or not any suit or other legal proceedings are actually commenced.

h.      "Eligible Mortgagee" – any holder, insurer or guarantor of a first mortgage on one or more Units in the Planned Community who shall have provided to the Association a written statement of its name, address and the Unit against which the mortgage it holds, insures or guarantees is a lien.

i.      "Executive Board" – a board of natural individuals of the number stated herein and in the Bylaws, who shall manage the business, operation and affairs of the Association on behalf of the Unit Owners and in compliance with and subject to the provisions of the Act.

2

j.    "Governing Documents" – this Declaration, the Bylaws and the Rules and Regulations, as each is amended from time to time.

k.    "Legal Descriptions" – the Legal Descriptions attached hereto as Exhibit "A."

l.    "Limited Common Elements" – A portion of the Common Elements allocated by or pursuant to the Declaration or by the operation of Section 5202(2) or (3) of the Act, for the exclusive use of one or more but fewer than all of the Units.

m.    "Limited Common Expense" – any expense incurred by the Association in connection with the maintenance, replacement, management and/or administration of portions or aspects of the Planned Community, benefiting, as determined by the Executive Board, less than all of the Units, or any Common Expense benefiting fewer than all of the Units.

n.    "Member(s)" – means a Person entitled to membership in the Association as provided herein.

o.    "Person" –natural individual, corporation, partnership, association, trust or other legal entity or any combination thereof.

p.    "Plans" – those plats and plans, including the Plats and Plans, prepared in accordance with the requirements of Section 5210 of the Act, as amended from time to time.

q.    "Plat" – means the Declaration Plat, as defined in the Act, attached hereto as Exhibit "B".

r.    "Property" – defined in Section 1.01 and consists of the real estate, including all improvements thereon, and all easements, rights and appurtenances belonging thereto, which by this Declaration has been submitted to the provisions of the Act.

s.    "Recorded" – that an instrument has been duly entered of record in the Office of the Department of Records of the City of Philadelphia, Pennsylvania.

t.    "Rules and Regulations" – means those rules and regulations that may be promulgated by the Association acting through its Board from time to time governing and regulating the Unit Owners' and/or occupants' use and enjoyment of the Common Elements, and other matters, pursuant to this Declaration. The Rules and Regulations may also set forth procedures to be followed by the Unit Owners and/or occupants in connection with any matter on which the Unit Owners and/or occupants may be required to obtain the approval or consent of the Association pursuant to this Declaration.

u.    "Special Declarant Rights" – are rights reserved for the benefit of the Declarant, which include the rights to:

(i)    maintain offices, signs and models;

3

      (ii)     use easements through the Common Elements for the purpose of making improvements within the Planned Community;

      (iii)    convert Common Elements to Limited Common Elements during the period of Declarant control (as described in Section 11.04); and

      (iv)    appoint or remove an officer of the Association or an Executive Board member during the period of Declarant control (as described in Section 11.04).

      v.    "Unit" – a part of the Planned Community designated for separate ownership or occupancy as described in Article VI and as depicted on the Plans.

      w.    "Unit Owner" – the record owner, whether one or more persons or entities, of fee simple title to any Unit which is part of the Planned Community, but excluding those having such interest merely as security for the performance of an obligation.

**Article IV**
**Applicability**

**Section 4.01.  Applicability.**  The Property against which this Declaration has been Recorded is subject to the provisions of the Act, the Bylaws and such Rules and Regulations as may be issued by the Executive Board of the Association from time to time to govern the use and occupancy of the Property.  Ownership, rental or occupancy of any of the Units in the Planned Community shall be conclusively deemed to mean that the Unit Owner, tenant or occupant has accepted and ratified this Declaration, the Bylaws and the Rules and Regulations of the Association and will comply with them as they now exist or may be created, amended or supplemented in the future.

**Section 4.02.  Interpretation of Declaration and Bylaws.**  In the event of a conflict of interpretation between the provisions set forth in the Bylaws and this Declaration, this Declaration shall govern except to the extent this Declaration is inconsistent with the Act.

**Article V**
**Plats and Plans**

**Section 5.01.  Plats and Plans.**  The Legal Descriptions, Plats and Plans attached as Exhibits "A" and "B" as of the date hereof show fully and accurately the Property, the name of the Property, the location of the Units, and such other information as is required by the Act.

4

## Article VI
## Units

**Section 6.01. Number of Units.**

a.    The Planned Community includes those Units listed on Exhibit "C" and depicted on the Plans, as such may be amended from time to time.

b.    The Planned Community shall consist of fifty-seven (57) Units.

**Section 6.02. Description of Units.**    Each Unit consists of the land containing one (1) townhouse dwelling with roof deck and one (1) garaged parking stall. The locations of all Units are shown on the Plats and Plans, attached as Exhibit "B". Exhibit "C" hereto is a list of all Units, their identifying numbers and percent interest appurtenant to each Unit.

All space, fixtures, structures, and improvements within the boundaries of a Unit are part of that Unit, from the underside of the concrete slab of the lowest level to and including the roof shingles and vertically to the middle of any party wall connecting two (2) Units, and extending fully from the sidewalk located in front of the Unit to the rear property line.   In addition, if any portion of a structure of a Unit extends beyond the Unit Boundaries, that portion shall be a Limited Common Element appurtenant to such Unit.

## Article VII
## Common Elements and Common Expenses

**Section 7.01. Common Elements.** The Common Elements, including but not limited to, the drive aisles, guest parking spaces, retaining wall and bioretention spaces, are shown on Exhibit "B" attached hereto.  The Declarant reserves the right to designate as a Common Element any portion of the Property depicted on the Plans as City potable water, a storm water drainage system and a sanitary sewage system and/or entrance/exit features and/or other utilities and utility areas, as such may be amended from time to time.

**Section 7.02. Construction and Transfer of Common Elements.**

a.    The Declarant shall construct the Common Elements and convey same to the Association no later than conveyance of the last Unit in the Property.  However, the Declarant reserves the right to convey the Common Elements, in whole or in part, at any time prior to the conveyance of the last Unit in the Property and in the event the Common Elements are not substantially complete at the time of conveyance, the Declarant covenants that it shall substantially complete the Common Elements being conveyed.  These Declarant obligations shall be a covenant running with the Property and shall be binding on the Declarant and/or any successor in interest of the Declarant whether or not the successor succeeds to any special Declarant rights.  Until such time as the Common Elements are conveyed to the Association, they shall be owned by the Declarant.

5

b.    The Declarant shall convey to the Association and the Association shall accept the Common Elements by special warranty deed and/or bill of sale, as applicable, for no consideration. The Declarant shall be responsible for any transfer tax due and any recording fees. Acceptance of the Common Elements by the Association shall not constitute a waiver of the Declarant's obligation to complete the Common Elements. The deed of conveyance shall be executed by the Declarant and then Recorded. A time-stamped copy of the deed of conveyance or the Recorded copy of the deed shall be provided to the Association.

c.    The Declarant shall be responsible for the real estate taxes on property designated to be Common Elements, if any, until conveyed to the Association.

d.    Any portion of the Planned Community, an improvement or facility will be deemed to be completed pursuant to Section 5414(c) of the Act upon the Recording of a certificate executed by an independent registered surveyor, architect or professional engineer stating that the portion of the Planned Community, improvement or facility is substantially completed in accordance with the use and occupancy provisions of the Philadelphia Code, the description set forth in this Declaration, the Plans and the Public Offering Statement and so as to permit the use of such portion of the Planned Community, improvement or facility for its intended use.

**Section 7.03. Use of Common Elements.** Except as their use may otherwise be limited by this Declaration or the Bylaws or the Rules and Regulations or otherwise by the Executive Board pursuant to its powers, each Unit Owner, tenant and occupant of a Unit, and the family members and guests of such Unit Owner, tenant and occupant, may use the Common Elements in common with all other Unit Owners and tenants or occupants of other Units and their respective family members and guests in accordance with the purposes for which they are intended without hindering or encroaching upon the lawful rights of the other Unit Owners. Unit Owners or occupants shall not obstruct the Common Elements in any way including, but not limited to, interfering with any storm water drainage. Unit Owners or occupants may not store anything in or on the Common Elements, without prior written permission of the Executive Board.

**Section 7.04. Maintenance and Repair of Common Elements.** The Declarant shall be responsible, at the Declarant's expense, for the maintenance and repair of any Common Element until such Common Element is substantially completed and conveyed to the Association. The Declarant shall be responsible, at the Declarant's expense, for the maintenance and repair of any Common Elements until such time as the Association collects its first Assessments from the Unit Owners. Upon the substantial completion and conveyance of a Common Element to the Association and the Association's collection of the Assessments from the Unit Owners, the Association shall thereafter provide for all maintenance, repair and replacement of such Common Element. The cost and expense of the foregoing shall be a Common Expense and the Executive Board shall include in the annual budget of the Association as part of the Assessments, reasonable reserves for periodic maintenance, repair and replacement of Common Elements.

6

**Section 7.05.  Alteration to Common Elements By Unit Owner.** Without limiting the rights of the Declarant in connection with all construction and improvements to be made in or to the Planned Community by the Declarant, no Unit Owner may make any improvements or alterations or do any work to any of the Common Elements. No Unit Owner shall impair any easement or hereditament therein without the unanimous consent of the Unit Owners affected thereby.

**Section 7.06.  Common Expense Liability.**

a.    Common Expenses are to be incurred for the administration and governance of the Planned Community, the maintenance, repair, replacement, insurance, administration, management, operation and use of the Common Elements, the making of any additions or improvements thereto and as charges for common utility services, including, but not limited to, any exterior lighting along the shared driveway, and shall be assessed by the Association against, and collected from, the Unit Owners; provided, however, that until the Association charges its first Assessments to the Unit Owners, the Declarant shall pay all Common Expenses of the Planned Community. Common Expenses benefitting fewer than all of the Units may be assessed as Limited Common Expenses exclusively against the Units benefitted.

b.    Each Unit Owner, by accepting title to his Unit, covenants and agrees to pay the Association his share of the Common Expenses. The obligation to pay Assessments is a covenant running with the Property, inseparable from each Unit, and any conveyance, lease, devise or other disposition or mortgage or other encumbrance of any Unit shall extend to and include the Assessment liability, whether or not expressly referred to in the instrument effecting such transfer.

c.    No Unit Owner may exempt himself from liability with respect to the payment of Assessments by waiver of the enjoyment of the right to use any of the Common Elements or by abandonment of his Unit or otherwise. The obligation to pay Assessments is absolute and unconditional and shall not be subject to set-offs or counterclaims.

**Section 7.07.  Amendment of Common Expense Liability Allocation.** The allocation of Common Expense appurtenant to each Unit shall have a permanent character, shall be inseparable from each Unit and shall not be altered or changed, except by the recording of an amendment to this Declaration, duly executed by all of the Unit Owners affected thereby and their Eligible Mortgagees.

**Section 7.08.  Conveyance or Encumbrance of Common Elements.** The Unit Owners may convey all or a portion of the Common Elements by the vote of not less than eighty percent (80%) of all Unit Owners entitled to vote and by the Eligible Mortgagees for at least forty-six (46) of the Units. However, this paragraph shall not affect Declarant's right to change Common Elements to Limited Common Elements during Declarant's period of ownership and control of the Project or portion thereof.

7

**Section 7.09. Obsolescence.** In the event that the Executive Board shall determine that any Common Elements of the Association are obsolete, the Executive Board may call for a vote of the Unit Owners to determine whether or not the said Common Elements should be demolished or replaced. In the event that eighty percent (80%) of the Unit Owners and Eligible Mortgagees shall determine that the said property should be demolished or replaced, the costs thereof shall be assessed against all of the Unit Owners equally.

**Section 7.10. Limited Warranty for Community Facilities.**

a.    Declarant warrants to the Association that the Declarant constructed improvements, comprising the Common Elements and Limited Common Elements (collectively, the "Community Facilities"), shall be free from structural defects for a period of two (2) years from the completion thereof.

b.    **THE WARRANTY DESCRIBED IN THIS SECTION IS THE ONLY WARRANTY MADE TO THE ASSOCIATION BY DECLARANT AND IS NOT A WARRANTY TO ANY OF THE UNIT OWNERS AND IS EXPRESSLY MADE IN LIEU OF ANY OTHER EXPRESS OR IMPLIED WARRANTIES BY DECLARANT, DECLARANT'S AGENTS OR EMPLOYEES OR ANY OTHER PERSON ON BEHALF OF DECLARANT.**

c.    The warranty described in this Section shall not apply to the Community Facilities if they have been subjected to misuse, any unauthorized modification or alteration, or damage by accident or have not been afforded reasonable care. The liability of Declarant under this warranty is limited to replacing or repairing any defective parts or materials which do not comply with the above warranty and in no event shall the liability of Declarant exceed the replacement cost of the Community Facilities containing the structural defect(s) upon which the warranty claim is based. In no event shall Declarant be liable to the Association or to any Unit Owner for consequential damages arising from any breach of the above warranty or for any negligence of Declarant. Declarant shall have the sole right to determine whether the structural defect shall be corrected by repair or replacement and the Association and the Unit Owners shall make every reasonable effort to make the Community Facilities, together with reasonable access thereto, available to Declarant and its agents, employees and invitees during normal business hours in order to permit such repair or replacement to be made.

d.    No claim arising out of the foregoing warranty may be brought unless, prior to the expiration of the warranty period set forth in subsection (a) above, the Association shall have first delivered written notice to Declarant of all alleged breaches of the warranty that would give rise to such a claim. The written notice must specifically set forth the alleged defect and its location.

e.    **The express warranty herein is in lieu of all other warranties, express or implied, including, but not limited to, any warranty of merchantability or fitness for a particular purpose. The warranty given herein by Declarant with respect to the Common Elements is the sole and exclusive warranty with respect thereto. Declarant's warranty with respect to the Common Elements shall apply solely to improvements, structures or**

8

components thereof constructed by Declarant and shall not apply to any portion of the Common Elements constructed by or under the direction of the Association or the Executive Board or which were constructed prior to the development of the Project.

## Article VIII
## Limited Common Elements

### Section 8.01. Limited Common Elements.

a.    The Limited Common Elements are as set forth on Exhibit "B" attached hereto. The Limited Common Elements, if any, are subject to regulation by the Association, as provided in this Declaration and in the Governing Documents.

b.    The Executive Board reserves the right to designate additional Limited Common Elements, in its sole discretion, if such Limited Common Elements would enhance the Property.

### Section 8.02. Maintenance and Repair of Limited Common Elements. The Association shall be responsible for the maintenance, repair or replacement of the Limited Common Elements. Any costs or assessments resulting from the maintenance, repair or replacement of the Limited Common Elements shall be the responsibility solely of the Unit Owners benefited by such Limited Common Elements. Limited Common Elements include, but are not limited to, the water and sanitary sewer lines that service each Unit. Any costs associated with the repair and maintenance of the water and sewer lines servicing each Unit shall be the sole responsibility of the respective Unit Owner.

## Article IX
## The Association

### Section 9.01. The Association. The Association is the governing body for the Planned Community and, except as otherwise provided in this Declaration, is responsible for administration and governance of the Planned Community and the inspection, maintenance, repair, replacement, management, operation and administration of the Common Elements and the making of any additions or improvements thereto. The duties of the Association shall be undertaken as provided herein, in the Act and in the Governing Documents, but nothing herein contained shall be construed so as to preclude the Association from delegating any of these duties to a manager or agent or to another person, firm or corporation, subject to the authority of the Association.

### Section 9.02. Membership in Association.

a.    Membership in the Association shall be limited to the Unit Owners of the Planned Community and the Declarant. Each Unit Owner, upon acceptance of a deed to a Unit, shall become a member of the Association. The Declarant shall be a member of the Association with respect to any Unit(s) owned by the Declarant.

9

b.     Every Unit Owner who shall be a member of the Association shall be entitled to all of the rights and shall be bound by all of the obligations accompanying membership, provided that any Unit Owner who is holding an interest in a Unit merely as a security for the performance of an obligation shall not be a member.

c.     Subject to the rights of the Declarant under Section 9.04(c), each Unit shall have one (1) vote. When more than one person holds an interest in a Unit, all such persons shall be Members, and the vote for each Unit shall be exercised as provided in Section 9.03 hereof and in the Bylaws, but in no event shall more than one (1) vote be cast with respect to any such Unit.

d.     Only those Unit Owners in good standing and entitled to vote shall be considered "Unit Owners" for purposes of obtaining a quorum, or determining the percentage of Unit Owners voting on a matter. A Unit Owner shall be deemed to be "in good standing" and "entitled to vote" at any annual meeting or at any special meeting of the Association if, and only if, he shall have fully paid all Assessments made or levied against the Unit Owner's Unit by the Executive Board, together with all interest, costs, attorneys' fees, penalties and other expenses, if any, properly chargeable to the Unit Owner's Unit, at least five (5) days prior to the date fixed for such annual or special meeting.

e.     In the event that a Unit Owner shall lease or permit another to occupy his Unit in accordance with the provisions of this Declaration, the tenant or occupant shall be permitted to use the Common Elements of the Association (subject however to such limitations on such use as would be applicable to the Unit Owner, especially as to Limited Common Elements) but shall have no vote in the affairs of the Association, except as the Unit Owner shall provide the tenant or occupant a written proxy to exercise the vote of the Unit.

f.     Membership in the Association shall automatically terminate when a Member sells, transfers or otherwise conveys his Unit.

**Section 9.03. Certificate of Voting.** The following shall apply to all Units owned by parties other than the Declarant. If a Unit is owned by one person, the Unit Owner's right to vote shall be established by the Recorded deed to the Unit. If a Unit is owned by more than one person, the person entitled to cast a vote for the Unit shall be designated in a Certificate signed by all of the record owners of the Unit and filed with the Secretary of the Association. If a Unit is owned by a corporation, limited liability company ("LLC") or a partnership, the member, officer, partner or employee thereof, entitled to cast the vote of the Unit on behalf of the corporation, LLC or partnership shall be designated in a certificate, signed by a member (as to an LLC), or the president or vice president, and attested by the secretary or assistant secretary of the corporation, or by the general partners of a partnership and filed with the Secretary of the Association (the "Corporate Certificate" for a corporation, an "LLC Certificate" for an LLC or a "Partnership Certificate" for a partnership). The person designated in the Corporate Certificate or LLC Certificate or Partnership Certificate who is entitled to cast votes for a Unit shall be known as the "Voting Member". If such a Certificate is not on file with the Secretary of the Association for a Unit owned by more than one person or by a corporation or LLC or partnership, the votes of the Unit concerned shall not be considered in determining the

10

requirement for a quorum, or for any purpose requiring the approval of a person entitled to cast votes for the Unit, except if such Unit is owned by a husband and wife. Corporate, Partnership and LLC Certificates shall be valid until revoked in writing by any Unit Owner of the Unit, or until superseded by a subsequent Certificate, or until a change in the ownership of the Unit. If a Unit is owned by husband and wife, the following three provisions are applicable to voting by such Unit:

      a.    The Unit Owners may, but they shall not be required to, designate a Voting Member.

      b.    If they do not designate a Voting Member, and both husband and wife are present at a meeting and are unable to concur in their decision upon any subject requiring a vote, they shall lose their right to vote on that subject at that meeting.

      c.    If they do not designate a Voting Member and only one is present at a meeting, the person present may cast the vote for the Unit, without establishing the concurrence of the absent person, just as though he or she owned the Unit alone.

## Section 9.04. Executive Board.

      a.    Subject to the provisions of this Declaration and the Bylaws and the Act, the Executive Board shall have the power to act on behalf of the Association. The Executive Board shall consist of three (3) Directors. The initial Directors shall be appointed, removed and replaced from time to time by the Declarant without the necessity of obtaining resignations. The Declarant-appointed Directors shall be replaced with Directors elected by the Unit Owners in accordance with the provisions of paragraph (b) of this Section.

      b.    For purposes of this Declaration, the term "First Election Meeting" shall mean the first meeting of the Association which shall occur no later than sixty (60) days after twenty five percent (25%) of the Units are conveyed to Unit Owners. The term "Transitional Meeting" shall mean the meeting of the Association which shall be held no later than sixty (60) days after eighty percent (80%) of the Units are conveyed to Unit Owners. Subject to the right of the Declarant to alter the following procedure so as to have all or part of the transition process occur earlier than as hereafter described, the transition from a Board comprised solely of Directors appointed by the Declarant to an Executive Board comprised solely of Directors elected by the Unit Owners shall occur as follows:

      (i)    At the First Election Meeting, the Unit Owners (other than the Declarant) shall elect one (1) Unit Owner to serve on the Board, which elected Director shall replace one (1) Declarant-appointed Director. This elected Director shall serve until the next annual meeting of the Association, which shall occur at least one hundred and eighty (180) days after the First Election meeting, at which time this elected Director may be reelected or his successor elected to serve a two (2) year term.

      (ii)    At the Transitional Meeting, the Unit Owners (other than the Declarant) shall elect two (2) Unit Owners to serve as Directors who shall replace the remaining

11

two (2) Directors appointed by the Declarant. The Directors elected pursuant to this Subsection shall serve until the next annual meeting of the Association next following the annual meeting, at which the Director elected pursuant to Subsection (i) above is reelected or replaced, at which time the two (2) Directors elected pursuant to this Subsection (ii) shall be reelected or their successors elected to serve two (2) year terms.

(iii)    Notwithstanding the foregoing, the Declarant shall have the right to appoint one additional non-voting member to the Executive Board to serve until sixty (60) days after the Declarant conveys to a Unit Owner the last Unit.

c.    After the election held pursuant to Subsection 9.04(b) above and until the Declarant has conveyed the last Unit in the Planned Community in the ordinary course of business, the Executive Board shall notify the Declarant in advance of all meetings of the Executive Board and the Association at the same time as notices are given to the Executive Board members or the Unit Owners, as the case may be. Until the Declarant conveys the last Unit in the Planned Community in the ordinary course of business, the Declarant shall be entitled to send a representative to observe all meetings of the Executive Board and Association.

d.    The members of the Executive Board and the officers of the Association and any committee members shall not be liable to the Unit Owners as a result of their activities as such for any mistake of judgment, negligence or otherwise, except for their own willful misconduct or bad faith. The Unit Owners shall forever defend, indemnify and hold harmless any person, his heirs and personal representatives, from and against any and all personal liability and all expenses that may result due to such person's service as a member of the Executive Board, officer or committee member of the Association, unless such liability and expenses stem from such person's willful misconduct or bad faith.

**Section 9.05. Budgets and Capital Expenditures.** By an affirmative vote of the Unit Owners in the Planned Community having at least seventy five percent (75%) of votes in the Association, the Unit Owners may reject any budget or capital expenditure approved by the Executive Board within thirty (30) days after the approval.

**Section 9.06. Actions Affecting the Declarant.** No action shall be taken by the Association or the Executive Board that would affect any rights, privileges, powers and options of the Declarant under this Declaration, the By-Laws or the Act without the prior written approval of the Declarant.

**Article X**
**Insurance**

**Section 10.01. Liability.** The Executive Board shall obtain or cause to be obtained "broad-form" comprehensive general liability insurance and property damage insurance covering liability for loss or damage to persons or property in such amounts, against such risks and in such insurance companies as the Executive Board shall from time to time determine, but in no event, less than $500,000 for death or injury to any one person, $500,000 for any single occurrence, covering each member of the Executive Board, the Managing Agent and persons employed by

12

the Association, each Unit Owner and the Unit Owner's family, tenants, agents or servants. Such insurance shall include protection against bodily injury and property damage that results from the operation, maintenance or use of the Common Elements, including, but not limited to, walkways and parking areas, any legal liability that results from lawsuits related to employment contracts to which the Association is a party, and such other risks as are customarily covered in similar projects. All liability insurance contracts shall contain severability of interest provisions or endorsements precluding the insurer's denial of a Unit Owner's claim because of negligent acts of the Association or other Unit Owners and cross liability endorsements to cover liabilities of the Association or the Unit Owners as a group to a Unit Owner.

**Section 10.02. Property.** The Executive Board shall obtain or cause to be obtained blanket "all-risk" hazard insurance coverage covering damage to property, insuring all structures and improvements, if any, erected in the Common Elements, including fixtures and equipment therein and thereof, and including all personal property owned by the Association (the "Insurable Property"). The Insurable Property shall be insured in and for the interest of the Association, the Executive Board, all Unit Owners and their mortgagees, as their interests may appear, in a company or companies acceptable to the standards set by the Executive Board in an amount equal to the maximum insurable replacement value, as determined annually by the Executive Board, with an "agreed amount endorsement" or its equivalent and an "Inflation Guard endorsement" (provided these two endorsements are commonly available and required by prudent institutional mortgage investors in the area of the Planned Community).

**Section 10.03. General Insurance Provisions.**

a.    All policies purchased by the Association shall be for the benefit of the Association, Executive Board, all Unit Owners, and their mortgagees, as their interests may appear; however, the Association and the Unit Owners shall be named insureds and it shall not be necessary to name each Executive Board member or each individual Unit Owner. Any Association policy shall provide that such policies may not be substantially modified or terminated without at least thirty (30) days' prior written notice to all insureds. Mortgagee endorsements may be issued upon request. The Association shall maintain the appropriate insurance coverage as is required under the Act and the guidelines and regulations promulgated by the Federal National Mortgage Association ("FNMA"), Federal Home Loan Mortgage Corporation ("FHLMC"), HUD and the VA or their successors, including, without limitation, such fidelity bond coverage as is described in the Bylaws in an amount sufficient to provide protection of at least 150% of the Association's Budget. The company or companies with whom the Executive Board shall place its insurance coverage, as provided in this Declaration, must be qualified and reputable companies, authorized to do business in the Commonwealth of Pennsylvania and rated A, with a V financial size category by A.M. Best Company, Inc. ("Best") in its "Key Rating Guide: Property Casualty" or a comparable rating if Best shall no longer be in existence. Premiums for such coverage and other expenses related to insurance shall be paid by the Executive Board and charged as a Common Expense or Limited Common Expense, as the case may be. All policies shall provide that they may not be canceled or substantially modified, by any party, without at least thirty (30) days' prior written notice to the Association and to each first mortgagee listed in the insurance policies. In addition, policies shall provide for the following: recognition of any Insurance Trust Agreement; a waiver of the right of subrogation

13

against Unit Owners individually and against members of their households; that the insurance is not prejudiced by any act or neglect of individual Unit Owners which is not in the control of such Unit Owners collectively; and that the policy is primary in the event the Unit Owner has other insurance covering the same loss (all of which are generally provided by insurers in the form of a "Special Community Endorsement" or its equivalent). Policies shall be deposited with the Executive Board. Said policies shall provide that all insurance proceeds payable on account of loss or damage shall be payable to the Association. The duty of the Executive Board shall be to receive such proceeds as are paid and hold the same for the purposes elsewhere stated herein, and for the benefit of the Association, the Unit Owners and their respective mortgagees as their interests may appear.

b.    The types and amounts of insurance coverage described in this Article X are minimum amounts based upon the requirements of the Act and the standards established by FNMA and FHLMC. The Executive Board shall review, at least annually, all insurance coverage carried pursuant to this Declaration to evaluate such coverage with respect to its compliance with the Declaration and with respect to the then current requirements of the Act and, to the extent the Planned Community is or will be subject to the approval of FNMA, FHLMC, HUD or VA, standards set by FNMA, FHLMC, HUD and VA, as well as with respect to what is reasonably appropriate coverage for projects comparable to the Property. In the event the Executive Board determines after such a review and evaluation that the insurance coverage required hereunder is not consistent with the requirements of the Act, the standards set by FNMA, FHLMC, HUD or VA or otherwise reasonably appropriate coverage when compared to coverage for projects comparable to the Property, the Executive Board shall have the power to deviate from the specific provisions of this Article X only to the extent of providing such consistent and reasonably appropriate coverage, provided the Executive Board shall provide the Unit Owners and their mortgagees at least thirty (30) days' prior written notice of any such deviation.

**Section 10.04. Proceeds from Property Insurance.** Proceeds from property insurance policies shall be paid to the Association. The Association shall hold any insurance proceeds in trust for the Unit Owners and lien holders as their interests may appear.

**Section 10.05. Disposition of Insurance Proceeds.** Any portion of the Common Elements, to the extent insured separately, which is damaged or destroyed shall be repaired or replaced promptly in accordance with the provisions of Section 5312 of the Act.

**Section 10.06. Association's Power to Compromise Claim.** The Executive Board is hereby irrevocably appointed agent for each Unit Owner and first lien mortgagee for the purpose of compromising and settling claims arising under insurance policies purchased by the Association, and to execute and deliver releases therefore, upon the payment of claims.

**Section 10.07. Other Insurance.** The Executive Board shall also obtain the following insurance coverages and endorsements as may be applicable to the Planned Community, all premiums for which are to be charged as Common Expenses:

a.    Worker's Compensation Policy to meet the requirements of law.

14

b.    Directors' and Officers' Liability, insuring the members and officers of the Executive Board and committee volunteers against personal liability arising from the performance of their duties.

c.    Blanket fidelity bonds if required in the Bylaws for all members of the Executive Board, officers and employees of the Association and all other persons who handle or are responsible for funds of or administered by the Association.

d.    Such other insurance as the Executive Board shall determine from time to time to be necessary or desirable.

e.    If available, and where applicable, the Executive Board shall endeavor to obtain policies which provide that the insurer waives its right of subrogation as to any claims against Unit Owners and members of their households, the Association, the Executive Board and their respective servants, agents and guests.

**Section 10.08. Limitation of Liability.**  Notwithstanding the duty of the Executive Board to maintain and repair parts of the Common Elements, the Executive Board shall not be liable for injury or damage caused by the failure of the Executive Board to maintain or repair the same, except to the extent of the proceeds of insurance carried by the Executive Board and collected and received therefor.

**Section 10.09. Use of Unit and Insurance Premiums.**  No Unit shall be used, occupied or kept in a manner which will in any way increase the insurance premiums payable by the Association, without the prior written permission of the Executive Board, which permission, if given at all, shall be conditioned upon the Unit Owner of such Unit being required to pay the full amount of such increase.  To the extent that the use or occupancy of a Unit or the Common Elements (whether permitted or without the permission of the Association) increases any insurance premium payable by the Association, the Association shall have the right to charge the amount of such increase to the Unit Owner of the Unit to which such increase is attributable.  No Unit or any part of the Common Elements shall be used, occupied or kept in any manner which would violate any law, statute, ordinance or regulation of any governmental body or which would lead to the cancellation of any insurance policy or policies on the Property.

**Section 10.10. Unit Owner Insurance.**  Unit Owners shall have the obligation to maintain insurance of their own on their Units and on the property therein (including vehicles), such insurance to include coverage for damage or destruction by fire and other casualty to any dwelling or other improvements erected or installed in or as part of a Unit, as well as all personal property, tangible or intangible erected therein or thereon and liability coverage for injuries to persons or damage to property occasioned by any use of the Unit. The Association does not insure Unit Owners for casualty or property loss.

15

## Article XI
## Easements and Declarant Rights

The following easements are hereby created:

**Section 11.01. Utilities, Pipes and Conduits.** The Property shall be subject to an easement for the present and future installation and maintenance of improvements and facilities for electric service, cable television service, telephone and other telecommunication service, water service, storm water management system, sanitary sewer service, gas service, fire protection and suppression services and other utility services and the facilities and appurtenances necessary to the same, which easement shall run in favor of the Declarant, the Association, the entity or entities owning or operating these facilities and providing the aforementioned services and Unit Owners (as to those facilities installed by the Declarant, the Association or an entity providing services to the Unit). The Declarant and the Board shall have the right to grant to third parties additional utility easements which are deemed reasonable by the Declarant or Board in connection with the supply of utility services to the Units and the Common Elements.

**Section 11.02. Association and Executive Board Access.**

a. The Association and its Executive Board, officers, agents and employees shall have the irrevocable right and easement to have access to each Unit as may be necessary for the inspection, maintenance, repair or replacement of the Common Elements or the making of any addition or improvements thereto; or to make repairs to the Common Elements if such repairs are reasonably necessary for public safety or to prevent damage to the Common Elements; or to abate any violation of law, orders, rules or regulations of the Association or of any governmental authorities having jurisdiction thereof.

b. The Association and its Executive Board shall have the right to grant permits, licenses and easements over and through the Common Elements for utilities, roads, and other purposes reasonably necessary or useful for the proper completion, maintenance and operation of the Planned Community.

**Section 11.03. Declarant's Offices, Models and Signs.** The Declarant reserves the right with respect to its marketing of Units to use the Common Elements for the ingress and egress of itself, its officers, employees, agents, contractors and subcontractors and for prospective sale or rental of Units. The Declarant shall also have the right, until the conveyance of the last Unit it owns, to erect signs on the Common Elements and on its Units. The Declarant shall have the right, from time to time, to locate and relocate model Units and sales or rental offices in connection with the marketing of Units. The rights reserved for the Declarant by this Section shall remain in effect for as long as the Declarant shall remain a Unit Owner in the Planned Community. This Section shall not be amended without the prior written consent of the Declarant.

**Section 11.04. Declarant's Easement for Construction and Completion.** The Declarant reserves the right and privilege with respect to construction of improvements on the Units or Common Elements of the Planned Community, to go upon any and all of the Units,

16

Common Elements for purposes of construction, reconstruction, maintenance, repair, renovation, replacement or correction of the Units or Common Elements (including, without limitation, to change the grade of grounds or to install drainage control devices so as to control possible drainage or runoff of storm water in connection with the development of the Property or adjacent land) and conversion of Common Elements to Limited Common Elements. This Section shall not be amended without the prior written consent of the Declarant.

### Section 11.05. Additional Easements.

a.   <u>Roof Drains and Storm Water</u>.

i.   All portions of Common Elements shall be subject to an easement in favor of each Unit for the runoff of storm water from the roof drains and other storm water collection and conduit facilities as are installed by the Declarant on any Unit. Each Unit Owner shall have full responsibility for the maintenance, repair and replacement of all storm water management systems installed or situated on or within the Unit Owner's Unit (except as specified in Subsection a. ii. below).

ii.   The portions of any Unit over which there is situated an area depicted on the Plans as a "Drainage Easement" shall be subject to easements in favor of the Declarant and the Association for the construction, installation, reconstruction, maintenance, repair, renovation, replacement by the Declarant and/or the Association of storm water systems within such "Drainage Easement" areas and for the flow of storm water through such "Drainage Easement" areas.

iii.   Unit Owners (other than the Declarant) shall not alter the location, size or operation of any such storm water management system without the prior written consent of the Association and the Declarant (until the Declarant has conveyed the last Unit the Declarant has the right to have included in the Planned Community).

b.   <u>Rights of Way for Water Main and Drainage</u>. The portions of any Unit over which there is situated an area depicted on the Plans as a "R.O.W. for Water Main and Drainage" shall be subject to easements in favor of the Declarant and the Association for the construction, installation, reconstruction, maintenance, repair, renovation, replacement by the Declarant, and/or the Association of any water or storm water improvements situate within such "R.O.W. for Water Main and Drainage" areas and for the flow of water and storm water through such "R.O.W. for Water Main and Drainage" areas.

**Section 11.06. Encroachment.** If any portion of the Common Elements hereafter encroaches upon any Unit, or if any improvement on any Unit hereafter encroaches upon any other Unit or upon any portion of the Common Elements as a result of settling or shifting of any building or buildings in which they are located or for other reasons, other than as a result of the purposeful or negligent act or omission of the Unit Owner of the encroaching Unit, or of the Association in the case of encroachments by the Common Elements, a valid easement appurtenant to the encroaching Units or Common Elements for the encroachment and for the maintenance of the same shall exist for so long as the encroachment shall exist.

17

**Section 11.07. Continuing Easements and Declaration Rights.** Sections 11.01, 11.02, 11.03, 11.04, 11.05, and 11.06 shall run with the land and inure to the benefit of and be binding upon the Association, each Unit Owner, and each mortgagee, lessee, occupant or other person having any interest in any Unit or in the Common Elements at the time of reference.

**Section 11.08. Submerged Lands License.** Due to the Property's proximity to the Delaware River, a portion of the Property, and consequently, seventeen (17) of the Units located east of the Bulkhead Line as noted on the Plats and Plans, will require a Submerged Lands License from the Commonwealth of Pennsylvania prior to the approval of any construction or building permits. Once a Submerged Lands License is obtained, construction on this portion of the Property will commence.

## Article XII
## Assessment of Taxes

**Section 12.01. Assessment of Taxes.** Each Unit shall be assessed and taxed as a separate parcel of real estate and each Unit Owner is charged with the payment of all such taxes, municipal claims and liens assessed, liened or filed against his Unit.

## Article XIII
## Unit Owner Obligations

**Section 13.01. Assessment Obligation.**

a.    Each Unit Owner covenants and agrees to pay to the Association all Assessments including, but not limited to: (i) regular Assessments for Common Expenses, including Limited Common Expenses; (ii) special Assessments, such Assessments to be fixed, established and collected from time to time as hereinafter provided; (iii) delinquency assessments, as established from time to time by the Executive Board, against any Unit Owner whose Assessments are delinquent for a period exceeding ten (10) days after the due date ("Delinquency Assessments"); (iv) Limited Common Expense Assessments; (v) any fines or interest charges; (vi) Assessments for what may from time to time be determined by the Association to be Common Expenses; and (vii) any costs incurred by the Association in achieving compliance by one or more Unit Owners with the obligations of Unit Owners under this Declaration (such costs being assessed specially as limited charges against the Unit Owner(s) who fail to comply). Until the Association makes an Assessment, the Declarant shall pay all the expenses of the Planned Community.

b.    The obligation to pay Assessments is to be deemed to be a perpetual covenant running with the land. Each Assessment shall be separate for each Unit and payable by the Unit Owner thereof. The Assessments and costs of collection (including attorneys' fees) shall be a charge on the Unit and shall be a continuing lien upon the Unit from the time each Assessment or costs of collection become due. Each such Assessment and costs of collection as hereinafter provided and pursuant to the Act, shall also be the personal obligation of the Unit Owner of the Unit at the time when the Assessment first became due.

18

c.    The Association shall have the right to assess as Limited Common Expenses, charges against any one or more Units to provide services which are exclusively for such Units including, but not limited to, the improvement and maintenance of any Common Elements (including Limited Common Elements) used principally by or benefiting the Unit Owners of such Units.

**Section 13.02. Common Expense Allocation.**    Each Unit in the Planned Community shall be assigned a percentage (the "Common Expense Percentage") which represents such Unit's proportionate share of the Common Expenses of the Association. The Common Expense Percentage as allocated to each Unit in the Planned Community on Exhibit "C" is established by multiplying one hundred (100) and the quotient resulting from dividing one (1) by the total of all Units in the Planned Community.

**Section 13.03. Amount of Assessment.**    At such time as the Association makes an Assessment, each Unit Owner shall be legally obligated to contribute to the Common Expenses of the Association providing for the administration and maintenance, replacement and repair of the Common Elements of the Planned Community, the administration and maintenance of the Association and all of its real and personal property, in such amounts as shall be determined by multiplying the Common Expense Percentage of the Unit by the total Common Expense for the Planned Community computed on a monthly basis based upon amounts established in the budget prepared by the Executive Board. Limited Common Expenses shall be assessed in accordance with Section 13.01(c) of this Declaration.    No Unit Owner may exempt himself from contributing toward such expenses by waiver of the use or enjoyment of any of the Common Elements or by abandonment of the Unit owned by him or by set-off or counterclaim. The Declarant shall cause to be collected at settlement from each purchaser buying a Unit from the Declarant a non-refundable contribution to the Association in the amount of Five Hundred Dollars ($500.00), which payment may be used by the Association (only after the transition of control of the Association from the Declarant to the Unit Owners) for such purposes (including, without limitation, being kept as reserves) deemed appropriate or desirable by the Executive Board, but shall not be deemed an advance of regular Assessments.

**Section 13.04. Time of Payment.**    Except as otherwise provided in this Declaration, payment by the Unit Owner of his share of the expenses aforesaid shall be made at the discretion of the Executive Board, provided that all regular and special Assessments shall be declared by the Executive Board annually and payable on a monthly basis; provided, however, that the Executive Board shall have the right to bill Unit Owners on a quarterly or annual basis in which event payments by Unit Owners shall be made quarterly or annually, as the case may be. The failure of the Executive Board to formally declare any such annual Assessments shall result in the regular Assessment for the immediately preceding month (or, if applicable, quarter or year) being the payment of the Assessment due and payable for the next month (or, if applicable, quarter or year).    In the event Assessments are not paid as required, the Executive Board may assess fines, Delinquency Assessments and the costs of collection (including attorneys' fees) and shall charge interest on any unpaid Assessment at the rate of fifteen percent (15%) per annum.

19

**Section 13.05. Effect of Non-Payment of Assessment.** Any Assessment or installment thereof not paid within thirty (30) days after the due date may bear interest from the due date at the rate of fifteen percent (15%) per annum or such higher rate as permitted by the Act. The Association shall have the right to accelerate payment of all remaining proposed monthly (or, if applicable, quarterly) payments of any Assessments for the remainder of the fiscal year, including the amount of any special Assessments. The Association may bring an action at law or in equity against the Unit Owner personally obligated to pay the same, or foreclose the lien described in Section 13.06 against the Unit or do both, or it may seek and obtain any other remedy provided at law or in equity. In addition to such other remedies available to the Association in the event of non-payment of Assessments, the Association shall have the right to revoke the rights of the Unit Owner in the Association, including the right to vote, provided the Association shall provide written notice of such revocation and an opportunity for the defaulting Unit Owner to be heard before the Executive Board or a committee appointed for such purpose. The decision of the Executive Board or such committee shall be final.

**Section 13.06. Lien of Assessments.** All Assessments and costs of collection thereof (including attorneys' fees), shall constitute a lien against said Unit in favor of the Association provided that Delinquency Assessments, all fines, fees, charges, late charges, interest and costs of collection thereof (including attorneys' fees) shall be subordinate to the lien of any first mortgage on a Unit. Such lien shall be effective from and after the time the Assessment or charge becomes due subject to the limitations of non-divestiture of Section 5315(b)(2) of the Act. Upon full payment of all sums secured by the lien and a preparation fee, the party making payment shall be entitled to a recordable satisfaction of lien to be Recorded at his sole expense. Such lien of the Association shall have the priority accorded Association liens by Section 5315 of the Act.

**Section 13.07. Method of Enforcing Collection of Assessments.** Any Assessment charged against a Unit may be enforced by a lawsuit brought by the Executive Board on behalf of the Association or of the members of the Association in an action at law or equity. Any judgment against a Unit and its Unit Owner shall be enforceable in the same manner as is otherwise provided by law. Reasonable attorneys' fees and court costs incurred by the Executive Board incident to the collection of any Assessments or the enforcement of any lien, together with all sums advanced and paid by the Executive Board for taxes and payments on account of superior liens which may be required to be advances by the Executive Board in order to protect its lien, shall be payable by the Unit Owner and secured by such lien.

**Section 13.08. Unpaid Assessments at the Time of Execution Sale Against a Unit.** In the event that title to a Unit is transferred by Sheriff's Sale pursuant to execution upon any lien against the Unit, the Executive Board may give notice in writing to the Sheriff of any unpaid Assessments which are a charge against the Unit, but have not been reduced to a lien, and the Sheriff shall pay the Assessments of which he has such notice out of the proceeds of the sale which remain in his hands for distribution after payment of all other claims which he is required by law to pay (including any claim of the Association given priority by the Act) but prior to any distribution of the balance to the former Unit Owner against whom the execution issued. The purchaser at such Sheriff's sale and the Unit involved shall not be liable for unpaid Assessments which become due prior to the Sheriff's sale of the Unit (except as provided under the Act). Any

20

such unpaid Assessments which cannot be promptly collected from the former Unit Owner may be reassessed by the Executive Board as a Common Expense to be collected from all the Unit Owners, including the Purchaser or acquirer of title at the Sheriff's sale, his successors and assigns. To protect its right to collect unpaid Assessments which are a charge against a Unit, the Executive Board may, on behalf of the members of the Association, purchase the Unit at Sheriff's sale provided such action is authorized by the affirmative vote of the majority of the Executive Board, and if it does so purchase, the Executive Board shall thereafter have the power to sell, convey, mortgage or lease such Unit, to any person whatsoever.

**Section 13.09. Voluntary Sale of a Unit.**  Upon the voluntary sale or conveyance of a Unit, or any other transfer, by operation of law or otherwise, except a transfer described in Sections 13.08 or 13.10, and a transfer by Deed in lieu of foreclosure to a holder of a mortgage, the grantee shall be jointly and severally liable with the grantor for all unpaid Assessments for Common Expenses which are charges against the Unit as of the date of the sale, conveyance or transfer, but such joint and several liability shall be without prejudice to the right of the grantee to recover from the grantor, in the amount of any such unpaid Assessments which the grantee may pay, and until any such Assessments are paid, they shall continue to be a charge against the Unit, which may be enforced in the manner set forth in Section 13.07; provided, however, any person who shall have entered into a written agreement to purchase a Unit shall be entitled to obtain a written statement from the Treasurer setting forth the amount of unpaid Assessments charged against the Unit and its Unit Owner, and if such statement does not reveal the full amount of the unpaid Assessments as of the date it is rendered, neither the purchaser nor the Unit after transfer thereof, shall be liable for the payment of the amount in excess of the unpaid Assessments shown on such statement.

**Section 13.10. Mortgage Foreclosure.**  If a mortgagee of a "first mortgage" of record or other purchaser of a Unit acquires title to such Unit as a result of foreclosure of the first mortgage, or by deed in lieu of foreclosure, such acquirer of title, his successors and assigns, shall be liable only for the share of Common Expenses or other charges by the Association pertaining to such Unit or chargeable to the former Unit Owner which have accrued for a period of no more than six (6) months prior to acquisition of title as a result of the foreclosure. Such unpaid share of the charges shall be deemed to be Common Expenses collectable from all of the remaining Unit Owners, including such acquirer, his successors and assigns.

**Section 13.11. Surplus Funds.**  Any surplus of the Association remaining after payment of or provision for Common Expenses and any allocation to reserves may be credited to the Unit Owners to reduce their future Assessments beginning in the next fiscal year after the surplus occurs, or otherwise applied at the discretion of the Executive Board.

**Section 13.12. Damages; Cost of Enforcement.**

a.     Each Unit Owner shall reimburse and indemnify the Association for any expenses, costs or damages incurred by the Association as a result of any damage to Community Facilities caused by the act, omission or negligence of such Unit Owner or his tenants, agents, guests, family members, licensees, contractors or subcontractors, upon demand by the Association. Such damages may be assessed as a Special Assessment against such Unit Owner.

b.     The Association has the right to enforce, by any available legal or equitable remedies, each Unit Owner's compliance with this Declaration. The Association shall have the right to collect, and any Unit Owner violating any provision of this Declaration shall be liable to the Association for, all Costs of Enforcement incurred by the Association and such Costs of Enforcement shall constitute Assessments against such Unit Owner and his Unit, and shall be collectible from such Unit Owner in the same manner as other Assessments are collectible hereunder.

**Section 13.13. Declarant's Assessment Obligations.** Declarant shall be liable for any charges or Assessments levied by the Association against Units owned by Declarant. Declarant shall have no other obligation to make contributions to the Association or to subsidize the operations of the Association, but Declarant may, in its sole and absolute discretion, make contributions or loans to the Association from time to time as may be necessary in order to operate the Association. The making of any contribution or loan to the Association in any one instance shall not constitute or create any obligation on the part of Declarant to make any contribution or loan in any other or subsequent instance.

**Section 13.14. Unit Owners' Negligence.** Each Unit Owner shall be obligated to reimburse the Association for any expenses incurred by it in repairing or replacing any part or parts of the Common Elements damaged by his act, omission or negligence or by the act, omission or negligence of his tenants, agents, guests or licensees, promptly upon receipt of the Association's statement therefor. Such reimbursement shall be considered an unpaid Assessment collectable in any manner provided herein in the case of unpaid and past due Assessments.

**Section 13.15. Assignment of Assessments.** The Association may pledge or assign its right to collect and receive Assessments to a financial institution in order to secure a loan for the financing of the costs of maintaining, repairing or replacing any portion of the Common Elements if the Association does not have sufficient reserves to pay the costs of such maintenance, repair or replacement.

**Section 13.16. CONFESSION OF JUDGMENT. AS A MEANS OF ENFORCING THE OBLIGATION OF THE UNIT OWNERS TO PAY ALL ASSESSMENTS LEVIED PURSUANT TO THIS DECLARATION AND THE BY-LAWS, THE EXECUTIVE BOARD SHALL HAVE THE RIGHT AND POWER TO OBTAIN A JUDGMENT OR JUDGMENTS FOR DELINQUENT ASSESSMENTS BY CONFESSION AGAINST THE UNIT OWNER AGAINST WHOM SUCH DELINQUENT ASSESSMENTS HAVE BEEN LEVIED. ACCORDINGLY, EACH UNIT OWNER, BY HIS OR HER ACCEPTANCE OF THE DEED TO HIS OR HER UNIT, SHALL BE DEEMED TO HAVE APPOINTED ANY ONE OR MORE MEMBERS OF THE EXECUTIVE BOARD THE ATTORNEY-IN-FACT FOR SUCH UNIT OWNER TO CONFESS A JUDGMENT AGAINST SUCH UNIT OWNER IN ANY COURT OF COMPETENT JURISDICTION IN THE COMMONWEALTH OF PENNSYLVANIA FOR ANY DELINQUENT ASSESSMENT OR ASSESSMENTS, FOR THE PURPOSE OF WHICH A COPY OF THIS SECTION AND A COPY OF THE UNIT OWNER'S DEED TO HIS OR HER UNIT (BOTH VERIFIED BY THE AFFIDAVIT OF ANY**

22

**MEMBER OR THE EXECUTIVE BOARD) SHALL BE SUFFICIENT WARRANT. THE AUTHORITY HEREIN GRANTED TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF BUT SHALL CONTINUE AND BE EFFECTIVE AT ALL TIMES WITH RESPECT TO EACH AND EVERY DELINQUENT ASSESSMENT. SUCH AUTHORITY TO CONFESS JUDGMENT AND THE AFORESAID APPOINTMENT OF ATTORNEYS-IN-FACT, BEING FOR SECURITY, SHALL BE IRREVOCABLE.**

### Article XIV
### Transfer and Lease of Units

**Section 14.01. Transfer of Units.** Any Unit Owner may, at any time, transfer all of his ownership in the Unit to another person, and it shall not be necessary to secure the prior consent of the Association, the Executive Board or of any other Unit Owner. However, all Unit Owners shall comply with the appropriate provisions of the Act, including Section 5407, as shall apply to the sale or transfer of a Unit.

**Section 14.02. Leasing of Units.**

a.    Declarant reserves the right to lease any and all of the Units owned by Declarant subject only to the provisions of this Section.

b.    No Unit Owner shall be permitted to lease his Unit unless such Unit Owner has complied with the relevant provisions of this Declaration, the Bylaws and the Rules and Regulations. All leases must be in writing for a term not less than one (1) year and approved by the Association, which approval shall not be unreasonably withheld. All leases shall provide that the lessee shall be subject in all respects to the provisions of this Declaration, the Bylaws and the Rules and Regulations of the Planned Community, as may from time to time be promulgated by the Executive Board. The leasing of a Unit shall not affect the liability of the Unit Owner with respect to his obligations under this Declaration, the By-laws and any Rules and Regulations. The provisions of this paragraph shall not apply to the holder of a first mortgage lien on a Unit who acquires title thereto.

c.    In the event the Unit Owner shall fail to pay any charge or Assessment levied by the Executive Board against a leased Unit and such failure to pay continues for ten (10) days, the Executive Board shall so notify the lessee of such Unit in writing of the amount due and, within fifteen (15) days after the date of such notice, the lessee shall pay to the Association the amount of such unpaid charges or Assessments, subject however to paragraph (d) of this Section. The amount of such unpaid charges or Assessments paid to the Association by lessee after the nonpayment by the Unit Owner shall be credited against and shall offset the next monthly rental installment due to the Unit Owner following the payment by the lessee of such charges or Assessments to the Association.

d.    In no event shall the lessee be responsible to the Association for any amount of unpaid charges or Assessments during any one month in excess of one monthly rental installment.

23

e.    The inclusion of Subsections c. and d. of this Section in a lease or addendum to a lease for the rental of a Unit shall be a condition precedent to the approval of such lease by the Executive Board.

## Article XV
## Use Restrictions

**Section 15.01. Non-Residential Uses.**  No industrial, manufacturing or commercial activity, trade or business shall be conducted on the Property or on or about any of the Units, or in any dwellings or other buildings or improvements now or hereafter constructed on the Property or any of the Units.

**Section 15.02. Subdivision or Partition.**  Once a Unit has been conveyed by the Declarant, such Unit may not be further subdivided or partitioned, directly or indirectly.  If approved by the City in writing, the Declarant may, from time to time, relocate boundaries between Units owned by the Declarant by appropriate amendment to or revisions of the Plan, as Declarant deems appropriate, in the Declarant's sole and absolute discretion.

**Section 15.03. Residential Use.**  Except as used by the Declarant in connection with construction and marketing of Residential Units in the Planned Community, each Unit shall:

a.    be used for single family residential purposes only (subject to applicable zoning restrictions); provided that occupations carried on in the Unit are permitted only if such use is incidental to the Unit's primary residential use; provided further that Unit Owners who pursue such incidental occupational use of their Unit, shall have no employees, customers or clients, or signs at the Unit and shall obtain prior approval from all municipal authorities having jurisdiction over the use.  As used in this Section 15.03a., the term "single family" shall mean an individual or group of persons not exceeding three (3) individuals who are not related by marriage, blood, or adoption;

b.    be occupied by no more persons than the maximum permitted by law for the Unit; and

c.    except for work done by the Declarant in connection with the construction completion and marketing of Units, and excepting Declarant's right to convert Common Elements into Limited Common Elements, nothing shall be built, caused to be built or done in or to any part of the Property which will alter or cause any alteration to the Common Elements or Unit exteriors (including security bars) without the prior written approval of the Executive Board.  Except as otherwise expressly provided herein, the Units shall be used solely and exclusively for residential purposes.

No more than one dwelling shall be located or constructed on any Unit.  No other building, including any detached driveway or other outbuilding, may be used or occupied, temporarily or permanently, as a residence.

24

### Section 15.04. Maintenance of Units.

a.    Each Unit and any dwelling and other improvements or structures erected thereon shall be maintained by the respective Unit Owner or occupant in a safe, clean and sanitary manner and condition, in good order and repair and in accordance with all applicable restrictions, conditions, ordinances, codes and any rules or regulations which may be applicable hereunder or under law. No portion of any dwelling or Unit shall be used in whole or in part for the storage of any property or thing that will cause it to appear to be in an unclean or untidy condition or that will be obnoxious to the eye. No noxious or offensive activity shall be carried on upon any Unit, nor shall anything be done thereon tending to cause annoyance or nuisance to any person using any portion of the Property. It shall be the responsibility of each Unit Owner to prevent the development of any unclean, unhealthy, unsightly or unkempt condition of his Unit. No Unit Owner or occupant of any Unit shall carry on, or permit to be carried on, any practice on his Unit or on the Property which unreasonably interferes with the quiet enjoyment and proper use of another Unit or the Common Elements by the Unit Owner or occupant of any other Unit, or which creates or results in a hazard or nuisance on the Property.

b.    In the event that a Unit shall not be maintained as required by the Declaration or any of the Rules and Regulations, the Association shall have the right (but no obligation) to enter upon the Unit to maintain the same, after giving the Unit Owner at least fifteen (15) days' written notice to cure any maintenance problems or deficiencies. In the event that the Association exercises its right of entry for maintenance purposes, the Association shall have the right to assess the particular Unit Owner for the cost of such entry and maintenance.

### Section 15.05. Above-Ground Utilities.
No above-ground conduits, pipelines, electric, telephone, cable television, radio or other utility transmission lines or antennae shall be installed on any Unit or on the exterior of any dwelling.

### Section 15.06. Animals.
Household pets may be kept in Units subject to Rules and Regulations adopted by the Executive Board, which Rules or Regulations may exclude any kind of pet by type or category; provided that permitted household pets shall not be kept, bred, or maintained for any commercial purpose; and provided further that any such authorized pet causing or creating a nuisance or unreasonable disturbance shall be permanently removed from the Property upon three (3) days' written notice from the Executive Board after two (2) prior written notices from the Board which were given within the immediately prior six (6) month period.

### Section 15.07. Outdoor Storage.
Outdoor storage of appliances, lumber, wood or building materials shall be forbidden, except during the construction, reconstruction or repair of any dwelling or other permitted structure on any Unit. No commercial trucks or vehicles, campers travel trailers or mobile homes, recreational vehicles, all-terrain vehicles, boats, boat trailers or other trailers, nor any unlicensed motor vehicles shall be kept or stored at any Unit, except in connection with the immediate maintenance, cleaning, repair or transportation thereof. The foregoing shall not be deemed to prohibit the storage of firewood, provided that such firewood is stored within the Unit.

**Section 15.08. Motor Vehicles.** Driveways and courts and other exterior parking areas in the Planned Community shall be used by Unit Owners and four (4) wheel passenger vehicles only. No recreational vehicles, mobile homes, trailers, boats, commercial vans or vehicles in excess of three-quarters (3/4) of a ton capacity (whether or not registered as a commercial vehicle with the Pennsylvania Department of Transportation) shall be permitted to be parked in the Planned Community. Trucks and vans (including moving vehicles) are permitted to be parked on a temporary basis within the Property in connection with the repair, maintenance or replacement work being performed for a Unit Owner or the Association. No Unit Owner or occupant shall leave any non-operating vehicle, any vehicle not currently registered and licensed or any vehicle having an invalid and expired state motor vehicle inspection sticker on or about the Planned Community.

**Section 15.09. Fencing.** No fencing shall be permitted on any Unit without prior written permission of the Executive Board, other than the original fencing installed by the Declarant, if any.

**Section 15.10. Exterior Changes/Additions to Dwelling and Outbuildings.** No exterior additions, modifications or alterations of any Unit, driveway, shed, roof or other structure shall be permitted hereunder without prior Executive Board approval unless:

      a.    The exterior materials and colors to be used in connection therewith are consistent with the exterior materials and colors used in connection with the original construction of the dwelling on such Unit;

      b.    The plans, specifications and elevations for such addition, alteration, improvement or structure shall have first been submitted to and approved in writing by the Declarant during his control period or by the Executive Board after the Declarant's control period;

      c.    Such additions, modifications or alterations of any Unit, dwelling, dedicated driveway, shed or other structure shall comply with all applicable governmental laws, ordinances and regulations governing same;

      d.    Security bars may only be installed in the interior of a Unit.

If any dwelling or other permitted outbuilding is partially or entirely destroyed by fire, storm or other casualty, any such dwelling or outbuilding, as the case may be, shall be partially or completely reconstructed utilizing the same exterior materials and colors as were used in the original structure, unless otherwise approved in writing by the Declarant or Executive Board, as the case may be, prior to commencement of any such improvement. Any new structure to be constructed as a replacement to a structure which has been damaged, destroyed or razed shall be substantially the same architectural style and design as the structure which it is replacing, unless otherwise approved in writing by the Declarant or Executive Board, as the case may be, prior to commencement of any such improvement.

26

**Section 15.11. Landscaping and Trees.** As long as the Declarant owns a Unit (a) no trees planted by the Declarant pursuant to City requirements and/or the Declarant's landscaping scheme for the Planned Community shall be removed, except for diseased or dead trees or trees needing to be removed to promote the growth of other trees or for safety reasons (in which event new replacement trees shall be planted), without the prior written consent of the Declarant, which consent may be withheld by the Declarant for any reason or no reason at all, and (b) any Unit Owner desiring to remove trees for any reason shall obtain prior guidance from the City concerning any regulations governing such activities. No Unit Owner shall alter the landscaping installed by the Declarant or the Association within the area lying between the boundary line of the Units and curb along the cartway of any City street or interior easement area.

**Section 15.12. For Sale/For Rent Signs.** Except for the right reserved by the Declarant in Section 11.03 (with respect to its marketing of Units) no sign, except "For Sale" or "For Rent" signs may be erected by any Unit Owner or occupant on or in any portion of the Property.

**Section 15.13. Declarant's Right to Maintain Models, Offices, Etc.** Notwithstanding any provision of this Declaration to the contrary, so long as Declarant owns any part of the Property, Declarant shall be entitled to maintain one or more model homes, sales offices and construction offices (including mobile offices) and to maintain and keep on portions of the Property owned by Declarant, construction equipment, vehicles, lumber and other building materials as may be necessary from time to time in connection with the development of the Property, the construction of dwellings and appurtenant improvements, and the installation of stormwater management and erosion control facilities, utilities and similar public improvements.

**Section 15.14. Other Declarant Rights.** Notwithstanding any provision of this Declaration to the contrary, Declarant reserves the right at any time, in Declarant's sole discretion, to change the floor plans, exterior elevation, building materials and general appearance or architectural style of dwellings and other improvements that may be constructed on any Unit or Units owned by the Declarant, including change in Common Elements areas. Provided that any such changes shall be consistent in quality and appearance with the Units which have been completed and sold.

The foregoing restrictions in Sections 15.01 to 15.14: (i) shall not be imposed upon the Declarant or any successor Declarant in the course of its construction, completion or marketing of the Planned Community or Units therein, and (ii) shall be enforceable by the Association and, as long as the Declarant owns any portion of the Property, by the Declarant.

## Article XVI
## Compliance and Default

### Section 16.01. Compliance and Default.

a.    Each Unit Owner shall be governed by and shall comply strictly with the terms, covenants, conditions and restrictions of the Act, this Declaration, the Bylaws and the

27

Rules and Regulations adopted pursuant thereto, and the same as they may be amended from time to time.

b.     The Executive Board shall have the power to adopt, amend and enforce compliance with such reasonable rules and regulations relative to the operation, use and occupancy of the Units and the Common Elements consistent with the provisions of this Declaration and the Act, including, but not limited to, such enforcement procedures and penalties for violations as the Executive Board shall deem appropriate. Any such rules and regulations shall be adopted or amended, from time to time, by means of appropriate resolutions duly approved by the Executive Board in accordance with the Bylaws. A copy of such Rules and Regulations and copies of any amendments thereto shall be delivered or mailed to each Unit Owner or occupant of a Unit promptly after the adoption thereof and shall be binding upon all Unit Owners, their successors in title and assigns, and occupants.

c.     Failure of the Unit Owner to comply with any provisions of the Act, this Declaration or any Rules and Regulations shall entitle the Association or Unit Owners to the remedies provided in this Declaration and the Act, and also to the following relief, none of which remedies shall be exclusive of any other remedies:

i.     Suits.    Failure to comply with the terms of the Act, this Declaration, Bylaws and the Rules and Regulations adopted pursuant thereto, and the same as they may be amended from time to time, shall entitle the Association or any aggrieved Unit Owner to sue for the recovery of damages or for injunctive relief, or both. Such relief shall not be exclusive of other remedies provided by law.

ii.     Costs and Attorneys' Fees.    In any proceeding arising because of an alleged failure of a Unit Owner to comply with the terms of the Act, the Declaration, the Bylaws and the Rules and Regulations adopted pursuant thereto, and the same as they may be amended from time to time, the prevailing party shall be entitled to recover the costs of the proceeding and reasonable attorneys' fees; provided, however, that no attorneys' fees may be recovered against the Executive Board in any such action unless the court shall first expressly find that the Executive Board acted in bad faith.

d.     The failure of the Declarant, or the Executive Board, or any Unit Owner to enforce any covenant, restriction or other provision of the Act, this Declaration, the Bylaws or the Rules and Regulations adopted pursuant thereto, shall not constitute a waiver of the right to do so thereafter.

**Section 16.02. Hearing Procedures.** No Unit Owner shall have the right to object, challenge, commence any suit at law or in equity or take any other action under any act, power or authority now in force or hereafter to be enacted except after following such procedures as are established by the Executive Board by Rule or Regulation consistent with the provisions of this Section. The Executive Board, or a committee as may be appointed by the Executive Board, shall hear claims from Unit Owners of alleged violations of the Declaration, Bylaws and Rules and Regulations (other than violations with respect to Assessment obligations) of the Association. The Executive Board or such committee shall hold a hearing on any such claim

28

within thirty (30) days after the receipt by the Executive Board of a formal written notice of a claim from a Unit Owner. A decision shall be issued in writing by the Executive Board within ten (10) days after the conclusion of the hearing. The Executive Board shall have the right to establish various rules and procedures governing the operation and administration of the hearing process and the enforcement of the Declaration, Bylaws and Rules and Regulations. Unless the internal remedies provided by this Section and such Rules and Regulations as may be promulgated by the Executive Board shall be expressly waived by the Association, or the Association fails or refuses to act, no action at law or in equity shall be commenced by any Unit Owner until such internal remedy is pursued to exhaustion. Any action by a Unit Owner against any other Unit Owner arising out of any term, covenant or condition contained in this Declaration, the Bylaws or any Rules or Regulations made pursuant thereto shall be subject to the same procedures. In hearings before the Executive Board or the committee designated by the Executive Board, all parties shall be entitled to be represented by counsel.

**Article XVII**
**Indemnification of Officers,**
**Executive Board and Committee Members**

**Section 17.01. Indemnification of Officers, Executive Board and Committee Members.** The Association shall indemnify every Executive Board member, officer and committee member, his heirs, executors and administrators, against all loss, costs and expenses, including attorneys' fees, reasonably incurred by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been an Executive Board member, officer or a committee member, except as to matters as to which he shall be finally adjudged in such action, suit or proceeding to be liable for gross negligence or willful misconduct. In the event of a settlement, indemnification shall be provided only in connection with such matter covered by the settlement as to which the Association is advised by counsel that the person to be indemnified has not been guilty of gross negligence or willful misconduct in the performance of his duty as such Executive Board member, officer or committee member in relation to the matter involved. The foregoing rights shall not be exclusive of other rights to which such Executive Board member, officer or committee member may be entitled. All liability, loss, damage, cost and expense incurred or suffered by the Association by reason or arising out of or in connection with the foregoing indemnification provisions shall be treated by the Association as Common Expenses; provided, however, that nothing contained in this Article shall be deemed to obligate the Association to indemnify any member, who is or has been an Executive Board member, officer or a committee member of the Association with respect to any duties or obligations assumed or liabilities incurred by him under and by virtue of his membership in the Association.

**Article XVIII**
**Amendments**

**Section 18.01. Generally.** Subject to the other provisions of this Declaration and the Act relative to amendment, this Declaration may be amended in the following manner:

29

    a.    <u>Before Any Conveyances</u>.  Prior to the transfer of any Unit by the Declarant to a Unit Owner, the Declarant may amend this Declaration in any legal fashion as the Declarant may deem appropriate without Permitted Mortgagee or Unit Owner approval. After such first transfer of title, the terms of the following subsections shall apply; provided, however, that any other provisions of this Declaration setting forth other conditions of amendment shall take precedence.

    b.    <u>Notice</u>. Notice of the subject matter of a proposed amendment shall be included in the notice of any meeting of the Executive Board in which a proposed amendment is considered, and shall be served upon all Unit Owners in the manner hereinafter provided for service of notices.

    c.    <u>Resolution</u>. An amendment may be proposed by the Declarant, Executive Board or twenty-five percent (25%) of the Unit Owners. No resolution of the Executive Board adopting a proposed amendment shall be effective unless it has been adopted by the affirmative vote of at least sixty-seven percent (67%) of the Unit Owners.

    d.    <u>Proviso Regarding Amendments</u>.  Notwithstanding any of the other provisions of this Section 18.01, except as otherwise permitted by the Act (See Section 5219) and provided in this Declaration, no amendment may increase the number of Units or change the boundaries of any Unit, Common Expense liability or voting strength in the Association allocated to a Unit, or the uses to which any Unit is restricted (except for Declarant's rights as set forth above) without the unanimous consent of the Unit Owners and the consent of the Eligible Mortgagees to which at least three-quarters of the votes in the Association are allocated. No amendment of this Declaration or any action taken by the Association or its Executive Board shall be made or taken which in any way would affect any of the rights, privileges, powers and options of the Declarant, its successors or assigns unless the Declarant, or its successors or assigns shall join in the execution of such amendment or consent, in writing, to the action of the Association or Executive Board.

    e.    <u>Execution and Recording</u>. A copy of each amendment shall be attached to or included with a certificate, certifying that the amendment was duly adopted, which certificate shall be executed and acknowledged by the officers of the Executive Board with the formalities of a deed. The amendment shall be effective when a copy of the amendment is Recorded.

    f.    <u>Correcting Errors</u>. If any amendment to this Declaration or the Bylaws is necessary in the judgment of the Executive Board to change, correct or supplement anything appearing or failing to appear therein which is incorrect, defective or inconsistent with anything in either this Declaration, the Bylaws or the Act, or if such amendment is necessary to conform to the requirements of FNMA, FHLMC, HUD or VA with respect to "PUD" projects or to the requirements of the municipality in which the Planned Community is located, the Executive Board may, at any time and from time to time effect an appropriate corrective amendment without the approval of the Unit Owners or the holders of any liens or all or part of the Property, upon receipt by the Executive Board of an opinion from independent counsel to the effect that the proposed amendment is permitted by the terms of this paragraph and by the Act. (*See* Section 5219(f)).

30

**Section 18.02 Certain Amendments.** Any amendments to do the following require the approval of all Unit Owners:

      a.     increase any Special Declarant Right;

      b.     alter the terms or provisions governing completion, conveyance or lease of any Common Elements; and

      c.     increase the maximum number of Units, change the boundaries of any Unit, the Common Expense liability or voting strength in the Association allocated to a Unit, or the uses to which any Unit is restricted.

## Article XIX
## Termination

**Section 19.01. Statute.** The Planned Community may be terminated as provided by Section 5220 of the Act.

**Section 19.02. Destruction.** In the event it is determined in the manner provided in the Act and the By-Laws that any Common Elements shall not be reconstructed after casualty, the Planned Community will be thereby terminated as to such Common Elements. The determination not to reconstruct after casualty shall be evidenced by a certificate of the Executive Board executed by its President and Secretary or Treasurer certifying as to the facts effecting the termination, which certificate shall become effective upon being Recorded.

**Section 19.03. By Agreement.** Subject to the limitations set forth in Section 19.01 above, the Planned Community may be terminated at any time by an agreement, in writing, in the form of a Deed of Revocation, executed by eighty percent (80%) of the Unit Owners. Such Deed of Revocation shall become effective upon being Recorded.

**Section 19.04. General Provisions.** Upon termination of the Planned Community, such Unit Owner shall thereby become a tenant-in-common of the Property as provided in Section 5220 of the Act, and the mortgagee and lienor of a former Unit Owner shall have a mortgage and lien solely and exclusively upon the respective interest of such tenant in common in the Property after the termination.

## Article XX
## Notice

**Section 20.01. Notice.** All notices required to be served upon Unit Owners pursuant to the Act, this Declaration or the Bylaws shall be sufficient if delivered to the Unit or mailed to the Unit Owner at the Unit mailing address by regular mail. The effective date of a notice shall be the date of delivery to the Unit in the case of actual delivery and a date five (5) days after deposit in the mail in the case of notice sent by mail.

31

## Article XXI
### Rights of Eligible Mortgagees

**Section 21.01. Eligibility.** A holder, insurer or guarantor of a first mortgage on a Unit in the Planned Community shall be required to provide to the Association a statement of its name, address and the Unit against which it is the holder, insurer or guarantor of a first mortgage to be entitled to the rights set forth in this Article and elsewhere in this Declaration.

**Section 21.02. Notices to Eligible Mortgagee.** Upon written request to the Association, identifying the name and address of the Eligible Mortgagee of the particular Unit, any Eligible Mortgagee shall be entitled to timely notice of:

      a.      Any condemnation loss or any casualty loss which affects a material portion of the Planned Community or any Unit on which it is an Eligible Mortgagee;

      b.      Any delinquency in the payment of Assessments or charges owed by a Unit Owner of a Unit or any other default in the performance by a Unit Owner of the Unit against which the Eligible Mortgagee lien applies to any obligation under this Declaration, the Bylaws or any Rules and Regulations of the Association, which delinquency or other default continues for a period of sixty (60) days;

      c.      Any lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Association.

### Section 21.03. Eligible Mortgagee Approval.

      a.      Any restoration or repair of the Planned Community, after a partial condemnation or damage due to an insurable hazard shall be performed substantially in accordance with the Plats and Plans, unless other action is approved by at least fifty one percent (51%) of all Eligible Mortgagees;

      b.      Any election to terminate the legal status of the Planned Community after substantial destruction or a substantial taking in condemnation of the Common Elements shall require the approval of at least fifty-one percent (51%) of all Eligible Mortgagees. Any other abandonment or termination of the Planned Community by act or omission shall require the prior written approval of at least sixty-seven percent (67%) of all Eligible Mortgagees;

      c.      Any decision to establish self-management by the Association shall require the prior consent of at least sixty seven percent (67%) of the Unit Owners and the approval of at least fifty one percent (51%) of the Eligible Mortgagees;

      d.      Any abandonment, partition, subdivision, encumbrance, sale or transfer of any of the Common Elements (except for Declarant's rights as aforesaid and for granting easements for utilities or other public purposes consistent with the intended use of the Common Elements) by act or omission shall require the prior written approval of at least sixty-seven percent (67%) of the Eligible Mortgagees.

## Article XXII
### Miscellaneous Provisions

**Section 22.01. Severability.** If any provisions of this Declaration are determined to be invalid, that determination shall not affect the validity or effect of the remaining provisions hereof or the By-Laws or any Rules and Regulations, all of which shall continue in effect as if such invalid provisions had not been included herein.

**Section 22.02. Exhibits.** All exhibits attached hereto are deemed incorporated herein and made a part hereof.

**Section 22.03. Headings.** The headings herein are for reference purposes only and shall not affect the meaning or interpretation of this Declaration.

**Section 22.04. Effective Date.** This Declaration shall become effective when it has been duly entered of record.

**Section 22.05. Binding Effect.** This Declaration shall inure to the benefit of and shall be binding upon the Declarant's successors or assigns.

*Remainder of page intentionally left blank.*

33

**IN WITNESS WHEREOF,** the Declarant has set its hand and seal the day and year first above written.

1121 Pier Village LLC

By: _____

ALEX HALIMI, Managing Member

34

## ACKNOWLEDGEMENT

STATE OF NEW YORK
~~COMMONWEALTH OF PENNSYLVANIA~~    )
                                     ) ss.:
COUNTY OF KINGS _____     )

On this, this 11th day of October, 2019, before me, the undersigned officer, personally appeared Alec Hshmi , the Managing Member of 1121 Pier Village LLC, a Pennsylvania limited liability company, and that as such, he has executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability company, being authorized so to do, and received a true and correct copy of this instrument and of all other documents referred to therein.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public
My Commission Expires: 7/7/22

DAVID S. COHEN
Notary Public, State of New York
No. 01CO6307382
Qualified in Kings County
Commission Expires 07/07/2022

35

## EXHIBITS TO DECLARATION

| | |
|---|---|
| Exhibit A | Legal Description |
| Exhibit B | Plats and Plans including<br>Common Elements,<br>Limited Common Elements |
| | Legal Description of Common Elements |
| Exhibit C | Units |

## EXHIBIT A

### LEGAL DESCRIPTION

**Pennoni**

1900 Market Street, Suite 300
Philadelphia, PA 19103
T: 215-222-3000
F: 215-222-3588

www.pennoni.com

BOLES 18001

METES AND BOUNDS DESCRIPTION

CITY OF PHILADELPHIA, COUNTY OF PHILADELPHIA

COMMONWEALTH OF PENNSYLVANIA

All that Certain Parcel or Tract of Land Situate in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania, as shown on a plan prepared by Pennoni Associates Inc. entitled "LOT ADJUSTMENT PLAN", project number BOLES 18001, dated 11/02/2018. Being more particularly described as follows:

BEGINNING at a point in the Southeasterly line of that portion of North Delaware Avenue (140' in width), measured the following two courses from a point at the intersection of the Northeasterly line of Ellen Street (50' in width) and Southeasterly line of North Delaware Avenue (140' feet in width):

1. Along the Southeasterly line of North Delaware Avenue (140' in width) North forty-three degrees thirty-one minutes three seconds East (N 43° 31' 03" E) Seven-hundred twenty-six and six-hundred fifty-six thousandths of a foot (726.656') to a point in said line thence;

2. Along said line North sixty-three degrees fifty-one minutes thirty-three seconds East (N 63° 51' 33" E) seven-hundred seventy-four and three-hundred sixteen thousandths of a foot (774.316') to the point of BEGINNING; thence

from said point of BEGINNING the following six (6) courses:

1. Leaving said point of BEGINNING along the Southeasterly line of North Delaware Avenue (140' in width) North sixty-three degrees fifty-one minutes thirty-three seconds East (N 63° 51' 33" E) two-hundred nine and three-hundred seventy-nine thousandths of a foot (209.379') to a point in a corner of lands now and formerly of Penn Treaty Homes, LLC thence;

2. Leaving said point, along a line now and formerly of Penn Treaty Homes, LLC, South twenty-three degrees eighteen minutes twenty-seven seconds East (S 23° 18' 27" E) two-hundred eighty-eight and forty-four thousandths of a foot (288.044') to a point in the Bulkhead Line approved by the Secretary of War approved September 10, 1940 thence;

3. Continuing along said line South twenty-three degrees eighteen minutes twenty-seven seconds East (S 23° 18' 27" E) five-hundred eighty-nine and three-hundred forty-five thousandths of a foot (589.345'), crossing a pedestrian easement fifty-one and eleven hundredths of a foot wide (51.11') beginning one-hundred twenty-three and twenty-nine

hundredths of a foot from said Bulkhead Line point, to a point in the Pierhead Line established January 5, 1894, approved by the Secretary of War September 10, 1940 thence;

4. Along said Pierhead Line South fifty-four degrees four minutes ten seconds West (S 54° 04' 10" W) two-hundred twenty and nine-hundred eighty-seven thousandths of a foot (220.987') to a point in a corner of lands now and formerly of Sugarhouse HSP Gaming, L.P. thence;

5. Along a line now and formerly of Sugarhouse HSP Gaming, L.P. North twenty-two degrees fifty-three minutes fifty-seven seconds West (N 22° 53' 57" W) six-hundred six and six-hundred eighty-one thousandths of a foot (606.681'), crossing a pedestrian easement one-hundred twenty-three and six-hundred thirty-nine thousandths of a foot wide (123.639') beginning two-hundred thirty-eight and two-hundred fifty-one thousandths (238.251') of a foot from said Pierhead Line point, to a point in the Bulkhead Line approved by the Secretary of War approved September 10, 1940 thence;

6. Along said line North twenty-two degrees fifty-three minutes fifty-seven seconds West (N 22° 53' 57" W) three-hundred eight and six-hundred seventy-five thousandths of a foot (308.675') to the point of BEGINNING.

Being a consolidated description of the same properties as described in Premises "A" and Premises "B" in Deed Document 50131753 together with the Pedestrian Easement described as "Exhibit A" in Document 53146196.

Containing 191,230 ± square feet.

Reviewed and Approved as per
Sub-Division Plan Requirements
Adopted by the Board of Surveyors

Surveyor & Regulator    District    Date

# EXHIBIT B

## PLATS AND PLANS



**Ruggiero Plante Land Design, LLC**
5900 Ridge Avenue    Philadelphia, PA  19128
phone 215.508.3900    fax 215.508.3800

## COMMON ELEMENT
## DESCRIPTION

**ALL THAT CERTAIN** Area in Pier Village, a Planned Community, situate in the City of Philadelphia, Commonwealth of Pennsylvania, as set forth in the Declaration of Pier Village, a Planned Community, and as depicted on the Declaration Plat recorded as Exhibit "D" thereto.

**BEING the Common Element,** as shown on the "Planned Community Declaration Plat" prepared by Ruggiero Plante Land Design, Philadelphia, PA on June 24, 2019, bounded and described as follows:

**BEGINNING** at a point, on the southeasterly line of North Delaware Avenue (140 feet wide on City plan, legally open), measured the following two (2) courses from the intersection of the northeasterly line of Ellen Street (50 feet wide on City plan, legally open) and the southeasterly line of said North Delaware Avenue: (1) North 43°31'03" East along the southeasterly line of said North Delaware Avenue, 726.656 feet to an angle point; thence (2) extending North 63°51'33" East, continuing along said line, 774.316 feet to the point of BEGINNING; thence

1. From said point of BEGINNING, extending North 63°51'33" East along the southeasterly line of said North Delaware Avenue, a distance of 82.167 feet to a point, a corner of Unit 7; thence

2. Extending South 23°18'27" East along the line of Unit 7, a distance of 25.844 feet to a point; thence

3. Extending South 66°41'33" West, continuing along the line of Unit 7, a distance of 2.650 feet to a point; thence

4. Extending South 23°18'27" East, continuing along the line of Unit 7, a distance of 14.537 feet to a point; thence

5. Extending North 66°41'33" East, continuing along the line of Units 7 through 1, a distance of 129.705 feet to a point; thence

6. Extending South 23°18'27" East, a distance of 323.968 feet to a point, a corner of Unit 37; thence

7. Extending South 66°41'33" West along the line of Units 37 through 32, a distance of 123.758 feet to a point; thence

8. Extending South 23°18'27" East along the line of Unit 32, a distance of 47.793 feet to a point; thence

9. Extending South 51°55'43" East, continuing along the line of Unit 32, a distance of 7.756 feet to a point; thence

10. Extending North 55°41'33" East, along the line of Units 32 through 35, a distance of 77.191 feet to a point; thence

Landscape Architecture . Civil Engineering  .  Site Planning  .  Land Surveying



**Ruggiero Plante Land Design, LLC**
5900 Ridge Avenue    Philadelphia, PA  19128
phone 215.508.3900    fax 215.508.3800

11. Extending North 23°18'27" West along the line of Unit 35, a distance of 3.692 feet to a point, a corner of Unit 36; thence

12. Extending North 66°41'33" East along the line of Units 36 and 37, a distance of 44.269 feet to a point; thence

13. Extending South 23°18'27" East, a distance of 470.566 feet to a point; thence

14. Extending South 54°04'10" West, a distance of 220.987 feet to a point; thence

15. Extending North 23°18'27" West, a distance of 915.351 feet to the first mentioned point and place of BEGINNING.

Excluding five (5) parcels described as follows:

**Exclusion Parcel 1**
**(Units 8-31)**

BEGINNING at an interior point, a corner of Unit 8, measured the following three (3) courses from the intersection of the northeasterly line of Ellen Street (50 feet wide on City plan, legally open) and the southeasterly line of said North Delaware Avenue (140 feet wide on City plan, legally open): (1) North 43°31'03" East  along the southeasterly line of said North Delaware Avenue, 726.656 feet to an angle point; thence (2) extending North 63°51'33" East, continuing along said line, 778.571 feet to a point; thence (3) leaving the line of North Delaware Avenue and extending South 23°18'27" East, a distance of 0.599 feet to the point of BEGINNING; thence

1. From said point of BEGINNING, extending North 66°41'33" East along the line of Unit 8, a distance of 36.908 feet to a point; thence

2. Extending South 23°18'27" East along the line of Units 8 through 31, a distance of 445.497 feet to a point; thence

3. Extending South 29°41'33" West, continuing along the line of Unit 31, a distance of 34.547 feet to a point; thence

4. Extending North 60°18'27" West, continuing along the line of Unit 31, a distance of 27.014 feet to a point; thence

5. Extending North 29°41'33" East, continuing along the line of Unit 31, a distance of 12.451 feet to a point; thence

6. Extending North 60°18'27" West, continuing along the line of Unit 31, a distance of 12.725 feet to a point; thence

7. Extending North 29°41'33" East, continuing along the line of Unit 31, a distance of 5.829 feet to a point, a corner of Unit 30; thence

**Ruggiero Plante Land Design, LLC**
5900 Ridge Avenue    Philadelphia, PA 19128
phone 215.508.3900    fax 215.508.3800

8. Extending North 23°18'27" West, continuing along the line of Units 30 through 8, a distance of 421.723 feet to the first mentioned point and place of BEGINNING.

### Exclusion Parcel 2
### (Units 54-57)

BEGINNING at an interior point, a corner of Unit 57, measured the following four (4) courses from the intersection of the northeasterly line of Ellen Street (50 feet wide on City plan, legally open) and the southeasterly line of said North Delaware Avenue (140 feet wide on City plan, legally open): (1) North 43°31'03" East along the southeasterly line of said North Delaware Avenue, 726.656 feet to an angle point; thence (2) extending North 63°51'33" East, continuing along said line, 774.316 feet to a point; thence (3) leaving the line of North Delaware Avenue and extending South 22°53'57" East, a distance of 60.458 feet to the point; thence (4) extending North 66°41'33" East, a distance of 135.990 feet to a point of BEGINNING; thence

1. From said point of BEGINNING, extending North 66°41'33" East along the line of Unit 57, a distance of 43.890 feet to a point; thence

2. Extending South 23°18'27" East along the line of Units 57 through 54, a distance of 70.822 feet to a point; thence

3. Extending South 66°41'33" West, continuing along the line of Unit 54, a distance of 43.890 feet to a point; thence

4. Extending North 23°18'27" West along the line of Units 54 through 57, a distance of 70.822 feet to the first mentioned point and place of BEGINNING.

### Exclusion Parcel 3
### (Units 48-53)

BEGINNING at an interior point, a corner of Unit 48, measured the following four (4) courses from the intersection of the northeasterly line of Ellen Street (50 feet wide on City plan, legally open) and the southeasterly line of said North Delaware Avenue (140 feet wide on City plan, legally open): (1) North 43°31'03" East along the southeasterly line of said North Delaware Avenue, 726.656 feet to an angle point; thence (2) extending North 63°51'33" East, continuing along said line, 774.316 feet to a point; thence (3) leaving the line of North Delaware Avenue and extending South 22°53'57" East, a distance of 139.942 feet to the point; thence (4) extending North 66°41'33" East, a distance of 94.020 feet to a point of BEGINNING; thence

1. From said point of BEGINNING, extending North 66°41'33" East along the lines of Unit 48 through 53, a distance of 108.728 feet to a point; thence

2. Extending South 23°18'27" East, along the line of Unit 53, a distance of 43.890 feet to a point; thence

Landscape Architecture  .  Civil Engineering  .  Site Planning  .  Land Surveying



**Ruggiero Plante Land Design, LLC**
5900 Ridge Avenue    Philadelphia, PA  19128
phone 215.508.3900    fax 215.508.3800

3.  Extending South 66°41'33" West along the line of Units 53 through 48; a distance of 108.728 feet to a point; thence

4.  Extending North 23°18'27" West, continuing along the line of Unit 48, a distance of 43.890 feet to the first mentioned point and place of BEGINNING.


## Exclusion Parcel 4
### (Units 42-47)

BEGINNING at an interior point, a corner of Unit 42, measured the following four (4) courses from the intersection of the northeasterly line of Ellen Street (50 feet wide on City plan, legally open) and the southeasterly line of said North Delaware Avenue (140 feet wide on City plan, legally open): (1) North 43°31'03" East  along the southeasterly line of said North Delaware Avenue, 726.656 feet to an angle point; thence (2) extending North 63°51'33" East, continuing along said line, 774.316 feet to a point; thence (3) leaving the line of North Delaware Avenue and extending South 22°53'57" East, a distance of 207.774 feet to the point; thence (4) extending North 66°41'33" East, a distance of 94.503 feet to a point of BEGINNING; thence

1.  From said point of BEGINNING, extending North 66°41'33" East along the lines of Units 42 through 47, a distance of 108.728 feet to a point; thence

2.  Extending South 23°18'27" East, along the line of Unit 47, a distance of 43.890 feet to a point; thence

3.  Extending South 66°41'33" West along the line of Units 47 through 42; a distance of 108.728 feet to a point; thence

4.  Extending North 23°18'27" West along the line of Unit 42, a distance of 43.890 feet to the first mentioned point and place of BEGINNING.


## Exclusion Parcel 5
### (Units 41-38)

BEGINNING at an interior point, a corner of Unit 41, measured the following four (4) courses from the intersection of the northeasterly line of Ellen Street (50 feet wide on City plan, legally open) and the southeasterly line of said North Delaware Avenue (140 feet wide on City plan, legally open): (1) North 43°31'03" East  along the southeasterly line of said North Delaware Avenue, 726.656 feet to an angle point; thence (2) extending North 63°51'33" East, continuing along said line, 774.316 feet to a point; thence (3) leaving the line of North Delaware Avenue and extending South 22°53'57" East, a distance of 260.096 feet to the point; thence (4) extending North 66°41'33" East, a distance of 137.438 feet to a point of BEGINNING; thence

1.  From said point of BEGINNING, extending North 66°41'33" East along the line of Unit 41, a distance of 43.890 feet to a point; thence

Landscape Architecture  .  Civil Engineering  .  Site Planning  .  Land Surveying



**Ruggiero Plante Land Design, LLC**
5900 Ridge Avenue    Philadelphia, PA  19128
phone 215.508.3900    fax 215.508.3800

2. Extending South 23°18'27" East, along the line of Units 41 through 38, a distance of 71.322 feet to a point; thence

3. Extending South 66°41'33" West along the line of Unit 38; a distance of 43.890 feet to a point; thence

4. Extending North 23°18'27" West along the line of Units 38 through 41, a distance of 71.322 feet to the first mentioned point and place of BEGINNING.

**CONTAINING:** 146,714.1 square feet of land (3.36810 acres).

Description dimensions are shown in United States standard measurement



Landscape Architecture  .  Civil Engineering  .  Site Planning  .  Land Surveying

UNITS - EXHIBIT C

PIER VILLAGE,
A PLANNED COMMUNITY
PHILADELPHIA, PENNSYLVANIA

| Addresses | Unit on Zoning Plan | % Total Interest |
|---|---|---|
| | 1 | 1.75% |
| | 2 | 1.75% |
| | 3 | 1.75% |
| | 4 | 1.75% |
| | 5 | 1.75% |
| | 6 | 1.75% |
| | 7 | 1.75% |
| | 8 | 1.75% |
| | 9 | 1.75% |
| | 10 | 1.75% |
| | 11 | 1.75% |
| | 12 | 1.75% |
| | 13 | 1.75% |
| | 14 | 1.75% |
| | 15 | 1.75% |
| | 16 | 1.75% |
| | 17 | 1.75% |
| | 18 | 1.75% |
| | 19 | 1.75% |
| | 20 | 1.75% |
| | 21 | 1.75% |
| | 22 | 1.75% |
| | 23 | 1.75% |
| | 24 | 1.75% |
| | 25 | 1.75% |
| | 26 | 1.75% |
| | 27 | 1.75% |
| | 28 | 1.75% |
| | 29 | 1.75% |
| | 30 | 1.75% |
| | 31 | 1.75% |
| | 32 | 1.75% |
| | 33 | 1.75% |
| | 34 | 1.75% |
| | 35 | 1.75% |

| | 36 | 1.75% |
|---|---|---|
| | 37 | 1.75% |
| | 38 | 1.75% |
| | 39 | 1.75% |
| | 40 | 1.75% |
| | 41 | 1.75% |
| | 42 | 1.75% |
| | 43 | 1.75% |
| | 44 | 1.75% |
| | 45 | 1.75% |
| | 46 | 1.75% |
| | 47 | 1.75% |
| | 48 | 1.75% |
| | 49 | 1.75% |
| | 50 | 1.75% |
| | 51 | 1.75% |
| | 52 | 1.75% |
| | 53 | 1.75% |
| | 54 | 1.75% |
| | 55 | 1.75% |
| | 56 | 1.75% |
| | 57 | 1.75% |
| **Total Lot Area & Ownership Distribution** | | **100.00%** |