**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 1121 PIER VILLAGE, INC,<br>PENN TREATY HOMES, LLC,<br>2626 FRANKFORD LLC<br>285 KINGSLAND LLC,<br>231 E 123 LLC,<br>193 HANCOCK, LLC<br><br>Debtors | **Chapter 11**<br>**Lead Case No. 21-11466 (ELF)**<br><br>**(Joint Administration Requested)** |
| 1121 PIER VILLAGE, INC,<br>PENN TREATY HOMES, LLC,<br>2626 FRANKFORD LLC<br>285 KINGSLAND LLC,<br>231 E 123 LLC,<br>193 HANCOCK, LLC<br><br>Plaintiffs<br><br>Vs.<br><br>SHARESTATES INTERCAP LINE,<br>LLC, SHARESTATES INVESTMENTS<br>LLC, ATLANTIS NATIONAL<br>SERVICES, INC.,<br>RAYMOND DAVOODI, RADNI<br>DAVOODI, ALLEN SHAYANFEKR<br><br>Defendants | **CHAPTER 11**<br><br><br>**Adversary No. 21-A-00044 (ELF)** |

**DEFENDANTS' OBJECTION TO THE DEBTORS'**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendants, Sharestates Intercap Line, LLC ("**Sharestates Intercap**"), Sharestates

Investments, LLC ("**Sharestates Investments**"), Raymond Davoodi, Radni Davoodi and Allen

Shayanfekr hereby object to the Debtors' Motion for Leave to Amend Complaint [Dkt No. 24]

(the "**Motion**") filed by Debtors 1121 Pier Village LLC, Penn Treaty Homes LLC, 2626 Frankford

LLC, 285 Kingsland LLC, 231 E 123 LLC and 193 Hancock LLC (collectively the "**Debtors**"),

and in support thereof state as follows:

## INTRODUCTION

On May 23, 2021, each of the Debtors filed voluntary petitions for relief under chapter 11

of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors assert in their

petitions that they are single asset real estate entities, as that term is defined in Section 101(51B).

The sole assets each of the Debtors are parcels of real estate encumbered by one or more

mortgages, including mortgages in favor of Sharestates Intercap or Sharestates Investments

(collectively, the "**Sharestates Entities**"). As evidenced by the Debtors' schedules and the claims

registers in these chapter 11 cases, the Sharestates Entities were each pre-petition lenders to the

Debtors, and advanced loans to the Debtors over a period of many years, secured by mortgages

against the Debtors' assets.

On May 27, 2021, the Debtors filed their Adversary Complaint Seeking Recovery of

Transfers Pursuant to 11 U.S.C. §§ 544, 547, 548 and 550, to Subordinate the Claims of Defendants

Pursuant to Section 510 or for Recharacterization, and to Recover Civil Damages Under State Law

and the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) [ECF No. 1]

(the "**Original Complaint**") against the Sharestates Entities, Raymond Davoodi, Radni Davoodi,

Allen Shayanfekr and Atlantis National Services, Inc. ("**Atlantis**" and, with the other defendants,

collectively, the "**Defendants**"). Pursuant to the Original Complaint, the Debtors assembled a

litany of contradictory and far-fetched claims arising under both the Bankruptcy Code and non-

bankruptcy law, and under theories of contract and tort, which, if successful, would nullify and

avoid millions of dollarsof loans made over several years, by the Sharestates Entities to the

Debtors.

The Original Complaint was a 56-page testament to the Debtors' desperate attempts to

blame third-parties for their own business choices and financial failures. A critical view of the allegations of the Original Complaint revealed it to be little more than conclusory statements combined with a regurgitation of the elements of various causes of action the Defendants were seeking to pursue, with shockingly few well-pled factual allegations.

On August 27, 2021, Defendants moved to dismiss the Original Complaint on the basis that it failed to state any claim upon which relief could be granted. *Defendants' Memorandum of Law in Support of Preanswer Motion to Dismiss* [Dkt No. 37] (the "**Defendants' Original Memorandum**"). In addition, two other motions to dismiss were filed by defendants Radni and Raymond Davoodi and by Atlantis National Services, Inc (together with Defendants' Original Memorandum, the "**Motions to Dismiss**").

The Debtors response to the Motions to Dismiss was due October 18, 2021. No response was filed to any of the Motions to Dismiss on or before that date. Instead, the Debtors filed the Motion, pursuant to which they seek to amend the Original Complaint. Attached to the Motion is the Debtors' proposed First Amended Complaint (the "**Proposed Amended Complaint**"). While the Debtors, through the Proposed Amended Complaint, have correctly abandoned certain of their claims alleged in the Original Complaint, many of the deficiencies in the Original Complaint identified in the Motions to Dismiss persist in the Proposed Amended Complaint. In addition, the new causes of action set forth for the first time in the Proposed Amended Complaint similarly fail to state a claim upon which relief can be granted.

As with the Original Complaint before it, the Proposed Amended Complaint still fails as a matter of law to state any claims against Defendants. Given the foregoing, permitting the amendment of the Original Complaint is futile, and the Motion should be denied.

**STATEMENT OF FACTS**

It is difficult, if not impossible, to gain an understanding of the relationship between the

Debtors and the Defendants from the allegations set forth in the Proposed Amended Complaint.

While the Proposed Amended Complaint manages to convey that one or more of the Sharestates

Entities loaned funds to one or more of the Debtors, there are no allegations that set forth the dates

those loans were made, the amounts of those loans, the specific borrowers or guarantors under

those loans, or the particular lender that advanced the loans.  Although the Original Complaint

suggested that the Sharestates Entities loaned "in total, over $70,000,000 to the Debtors…" and

referenced "over seventy (70) Mortgages on the Projects," the Proposed Amended Complaint does

not even reference the number of loans or mortgages advanced to the Debtor or the amount of

financing provided.

No loan documents are attached to the Proposed Amended Complaint apart from: (i) a

Confirmation, Modification and Ratification to Loan Documents dated August 20, 2020, between

Sharestates  Investments (but not Sharestates Intercap), 1121 Pier Village, and two guarantors of

the 1121 Pier Village loans, Saul Mazor and Alex Halimi (the "Modification"), and (ii) a

Forbearance Agreement dated August 20, 2020, between the Sharestates Entities, Penn Treaty,

Saul Mazor and Alex Halimi (the "Forbearance Agreement").

Apart from those two loan documents, there is no description of the loans or mortgages at

issue in the Proposed Amended Complaint, or the properties they encumber.  There are no copies

of the loan documents referenced in the Forbearance Agreement or the Modification, and, thus, no

way to determine if the Sharestates Entities acted in accordance with the terms of those loans or if

they breached those contracts, as alleged by the Debtors.  There are, similarly, no allegations that

describe the loans or obligations of those Debtors who were *not signatories* to the Modification or

the Forbearance Agreement – namely, 2626 Frankford, 285 Kingsland, 231 E 123, or 193 Hancock
– and how they are entitled to any relief with respect to the claims made on behalf of all Debtors.

Importantly, because there are no allegations about when the loans were extended, or
mortgages were granted, it is impossible to gather from the allegations of the Proposed Amended
Complaint whether claims have been made within any applicable statute of limitations, or alleged
voidable transfers occurred with the time periods set forth in the Bankruptcy Code and under
PUFTA.   While the Proposed Amended Complaint certainly seeks to attribute the Debtors'
financial failures to the Sharestates Entities, it in unsuccessful in doing so in a way that states a
valid claim upon which relief can be granted.

All of these deficiencies were raised in the Motions to Dismiss.  Instead of including more
information about the loans and mortgages to support their claims, the Debtors have inexplicably
opted to include fewer substantive allegations in the Proposed Amended Complaint.   This is
because, had such information been provided, Debtors would have established conclusively that
their claims fail.   In reality, the Sharestates Entities advanced multiple loans to the Debtors and
their affiliates over a period of years, beginning as early as 2015. *Original Complaint*, ¶ 24. The
Penn Treaty loans were originally advanced by Sharestates Investments to Penn Treaty as early as
November 8, 2017. *Forbearance Agreement* at 1. The 1121 Pier Village loans were originally
advanced by Sharestates Investments to 1121 Pier Village on January 27, 2020. *Modification* at
1.  By August 20, 2020, Penn Treaty had defaulted on its loan obligations to the Sharestates
Entities. *Forbearance Agreement* at 11.  The Penn Treaty loans were cross-defaulted with the
loans made by the Sharestates Entities to the other Debtors, resulting in defaults under those loans.
*Proposed Amended Complaint,* ¶ 33.  By the time of the Modification and the Forbearance
Agreement, the Debtors' operations had ceased, their finances were "destroyed," and their ability

to continue as a going concern was so impaired…that the Debtors could not restart operations." *Original Complaint.* ¶ 159. The Modification and Forbearance Agreement appear to have been a last-ditch effort to salvage the Debtors' "Project" – and both Penn Treaty and 1121 Pier Village were represented by counsel in those endeavors.[1] Those efforts were ultimately unsuccessful. Still, the failure of the Debtors' businesses is not the fault of the Defendants, and – even if taken as true – the well-pled factual allegations of the Complaint fail to state any valid claim upon which relief can be granted.[2]

## **STANDARD OF REVIEW**

Pursuant to the Motion, the Debtors seek leave to amend the Original Complaint and to file the Proposed Amended Complaint in its stead.  The Debtors' request is governed by Fed. R. Civ. P. 15(a)(2), made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7015, which provides "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  *Fed. R. Civ. P. 15(a)(2).*  At the same time, a court need not grant a request to amend a pleading when the amendment would be futile.  *Parker v. FDIC*, 447 Fed. Appx. 332, 337 (3d Cir. 2011) *quoting Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).  Instead, a trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.  *Massarsky v. Gen. Motors Corp.,* 706 F.2d 111, 125 (3rd Cir. 1983).  "'Futility' means that the complaint, as amended, would

---

[1] 1121 Pier Village and Penn Treaty were represented by the same law firm who commenced the present action, and that now seeks to pursue the Proposed Amended Complaint.
[2] In the Motion, the Debtors brazenly assert that that "[t]his Court stated in October 13, 2021 hearing that the current complaint states claims but must be amended."  *Motion,* p. 1.  This Court said no such thing.  Instead, this Court's comments at the October 13, 2021 hearing with respect to the Original Complaint included that this Court "[didn't] have any strong feelings yet one way or the other about whether really on true 12(b)(6) merits [it] should be dismissing the complaint yet…."

fail to state a claim upon which relief could be granted, and is analyzed under the same legal
sufficiency standard as a Rule 12(b)(6) motion." *Evans v. City of Philadelphia,* 763 Fed. Appx.
183, 185-6 (3rd Cir. 2019).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true,
to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a
sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim has
facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts, however,
should, not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion
to dismiss." *Morse v. Lower Merion Sch. Distr.*, 132 F.3d 902, 906 (3d Cir. 1997).

## ARGUMENT

I.  **COUNT I OF THE PROPOSED AMENDED COMPLAINT STILL FAILS
    TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In Defendants' Original Memorandum, Defendants detailed why the Debtors' Count I of
the Original Complaint, seeking to avoid the Pier Village Mortgages pursuant to Section 544 of
the Bankruptcy Code, fails as a matter of law. The Debtors opted to file no response to the Motions
to Dismiss, and instead seek leave to file the Motion.  With respect to Count I, the Proposed
Amended Complaint remains deficient. Indeed, the primary substantive modification made to
Count I is the inclusion of the following allegations:

109.  Following the recording of the Pier Village Mortgages, Pier entered
      into the Modification with Sharestates.

110.  Sharestates did not record new mortgages consistent with the

Modification.

111.    The Modification of the underlying loan obligations rendered the
        Pier Villages Mortgages unperfected as against a future purchaser.

113.    A perfected lien or execution creditor would obtain superior priority
        to the Pier
        Village Mortgages.

*Proposed Amended Complaint,* ¶¶ 109, 110, 111 and 113.    Paragraphs 111 and 113 are legal

conclusions, and do not qualify as allegations sufficient to state a claim.  With respect to paragraphs

109 and 110, even if taken as factually true, neither of the new allegations along with the prior

factual allegations are sufficient to state any claim.

### A.    The Declaration Creates Individual Units as Separate Real Property that Can be Mortgaged, Regardless of Construction

In their Proposed Amended Complaint, the Debtors still contend that the Pier Village

mortgages are somehow invalid because the units secured by the mortgages have not yet be

constructed. *See, Proposed Amended Complaint* at ¶¶102-108.  The Debtors' claims, however, do

not withstand the most minimal scrutiny and are contrary to clear Pennsylvania statutes.

By virtue of the "Declaration of Pier Village, a Planned Community," dated October 11,

2019, and recorded by the Debtors in records of the Philadelphia County Clerk, Debtors submitted

Pier Village to the Pennsylvania Uniform Planned Community Act (68 Pa. Cons. Stat. §5101 et

seq.). *See Declaration*, a copy of which is attached hereto as Exhibit A, §2.01 ("[Debtor 1121 Pier

Village, LLC] is the equitable owner of the real estate addressed as 1121-41 N. Delaware

Avenue[,]" Philadelphia Pennsylvania and "hereby submits the Property, any improvements

hereafter constructed thereon, and all easements, rights and appurtenances belonging thereto, to

the provisions of the Pennsylvanian Uniform Planned Community Act, Act No. 1996-180, as

amended, (68 Pa. Cons. Stat. §5101, *et seq.*) (herein called the 'Act'), and Declarant hereby creates a planned community (the 'Planned Community') pursuant to the Act."); *see, also,* 68 *Pa.C.S. 5201* ("A planned community may be created pursuant to this subpart only by recording a declaration executed in the same manner as a deed by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease, the expiration or termination of which will terminate the planned community or reduce its size.").

By statute, each of the units created by the Declaration (and mortgaged by the Debtors to Sharestates) were created as individual, then existing parcels of real property, regardless of whether actual physical improvements were constructed.  *See 68 Pa.C.S. §5204* ("After the declaration is recorded, a description of the unit which sets forth the name of the planned community, the recording data for the declaration, the county or counties in which the planned community is located and the identifying number of the unit is a sufficient legal description of that unit and all rights, obligations and interests appurtenant to that unit which were created by the declaration or bylaws.") (emphasis added); *68 Pa.C.S. 5105* ("each unit that has been created, together with the interests, benefits and burdens created by the declaration, including, without limitation, the rights to any common facilities, constitutes a separate parcel of real estate. The conveyance or encumbrance of a unit includes the transfer of all of the rights, title and interest of the owner of that unit in the common facilities regardless of whether the instrument affecting the conveyance or encumbrance so states."); *Uniform Planned Community Act Comments, National Conference of Commissioners on Uniform State Laws*, 1980 ("Unlike the Uniform Condominium Act, structural completion is not required before the planned community is created.").  And, each unit, regardless of whether constructed, could be mortgaged.  *Id.*

Here, the Declaration provides that "[a]ny … abandonment or termination of the Planned Community by act or omission shall require the prior written approval of at least sixty-seven (67%) of all Eligible Mortgagees[,]" defined as "[a] holder, insurer or guarantor of a first mortgage on a Unit in the planned Community" that provides notice to the Association. *Declaration*, at §21.03, *see also 68 Pa.C.S. 5221(a)* ("The declaration may require that all or a specified number or percentage of the mortgagees or beneficiaries of deeds of trust encumbering the units approve specified actions of the unit owners or the association as a condition to the effectiveness of those actions"); *68 Pa.C.S. 5220(a)* ("a planned community may be terminated only by agreement of unit owners of units to which at least 80%, or such larger percentage specified in the declaration"). Sharestates holds mortgages on 37 of the 57 units (i.e., 65%); *compare, Proposed Amended Complaint,* ¶¶ 22, 45, 102. Thus, Sharestates approval, which it will not give, is required to terminate the community in order to achieve the approval of at least 67% of all Eligible Mortgagees. Unless and until the Declaration is terminated, which has not occurred and which will not occur without Sharestates's consent, the Debtors and any subsequent purchasers, lienors, and creditors, are bound by the recorded Declaration and the boundaries of separate parcels of real estate created thereby (i.e., the units).

Finally, as the Declaration is recorded, per 21 Pa.S. §357, "[t]he legal effect of [its] recording . . . shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements of the fact of the granting of such rights or privileges and/or of the execution of said releases, and the rights of the subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements shall be limited thereby with the same force and effect as if said subsequent purchasers, mortgagees, and/or judgment creditors had actually joined in the execution of the agreement or agreements aforesaid."   Given

the foregoing, there is simply no merit to the Debtors' allegations that Sharestates' mortgages against Pier Village are unperfected, and the Debtors have not, in the Proposed Amended Complaint or otherwise, identified any factual or legal basis to invalidate the recorded Declaration. Consequently, Count I of the Proposed Amended Complaint still fails to state any claim upon which relief can be granted.

### B.    The Debtors Released All Claims as to Validity of the Mortgages

Via an arms-length transaction negotiated with Debtors' counsel, the Obermayer Firm, the Debtors expressly confirmed and ratified the validity of the mortgages. *Modification* at §2.1 ("Lender and Borrower confirm the provisions, obligations and terms set forth in the Loan Documents that apply to Lender and Borrower individually and in the aggregate, except as may be specifically provided otherwise herein."); *Id.* at §2.2(a) ("The Note, the Guaranty and each other Loan Document to which the Borrower and/or the Guarantors is a party is in full force and effect and continues to constitute legal and enforceable obligations of the Borrower"); *Id.* at §6.1 ("Except as expressly modified hereby, the Loan Documents, shall continue in full force and effect and the terms thereof are hereby ratified and confirmed in all respects."); *Id.* at §5.1 (releasing Sharestates from "all claims, counterclaims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages, and liabilities of every kind and character whatsoever" relating to the Loan Documents).

For the Debtors to now claim that the mortgages are invalid in the face of the Modification is improper, and Debtors are precluded from doing so. *See Invs. Com. Cap. LLC v. Unknown Heirs,* 2016 WL 4943457, at *10 (Pa. Super. Ct. Sept. 15, 2016) ("All of the defenses asserted by Defendants could have been asserted prior to execution of the Forbearance Agreement. Therefore, all of Defendants' defenses have been released under the terms of the Forbearance Agreement.").

Debtors were provided with ample opportunity between the filing of the Motions to Dismiss and the filing of the Motion to address Defendants' arguments on this point, and failed to do so. If Defendants were able to identify any additional facts in the Proposed Amended Complaint to cure the deficiencies in the Original Complaint with respect to controlling legal authority set forth in the Motions to Dismiss, they seemingly would have done so. The fact that the Proposed Amended Complaint suffers from the same inadequacies is the Original Complaint is a testament to the fact that the Debtors are unable to set forth allegations which, if true, would constitute a claim under Count I of the Proposed Amended Complaint.

C.    **Recordation of the Modification is Unnecessary and Has No Effect on the Mortgages**

As detailed above, the only substantive changes to Count I made in the Proposed Amended Complaint seem to allege that Pier Village mortgages are invalid because the Modification was not recorded. *Proposed Amended Complaint,* ¶¶ 109-113.   This allegation grossly misapprehends the purpose of Pennsylvania recording laws.  Instruments are recorded "to protect subsequent bona fide purchasers from injuries caused by secret pledges of property." *See Com., Pennsylvania Game Comm'n v. Ulrich*, 565 A.2d 859, 861 (Pa. Commw. Ct. 1989).  The failure to record, however, "is of limited consequence: Pennsylvania law recognizes an unrecorded interest in property as valid." *See MERSCORP, Inc. v. Delaware Cty.*, 160 A.3d 961, 966 (Pa. Super. Ct. 2017) (holding that assignments of mortgage do not have to be recorded), *aff'd*, 207 A.3d 855 (Pa. 2019).

Here, the law is clear: there was no requirement to record the Modification.  The mere fact that the Modification was not recorded can have no effect on its validity or the enforceability as between the Debtor and Sharestates.  The Modification remains valid and enforceable as against the Debtor.  Similarly, there is nothing in the Modification that releases, discharges or erases the mortgage liens, such that any new mortgages were required to be recorded.  Rather, the

Modification simply modifies certain terms concerning the funding of the underlying loans. The amount, interest rate, and all other terms of the mortgages remained the same. Indeed, the Modification confirms the continuing validity and enforceability of the then-existing mortgages. *See Modification* at §§2.1, §2.2(a), 5.1, 6.1.

There was simply no obligation set forth in the Modification, and Debtor has not identified any law, requiring the execution and recordation of new mortgages to replace Sharestates' existing mortgages against Pier Village. In the absence of any such authority, the Debtors' amended Count I still fails to state a claim.

## II.  COUNT II, III and IV OF THE PROPOSED AMENDED COMPLAINT STILL FAIL TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to Count I, three other counts of the Debtors' Proposed Amended Complaint seek to avoid and recover various transfers made from the Debtors to "Sharestates" – defined by the Debtors to include both Sharestates Investments and Sharestates Intercap. *Proposed Amended Complaint,* p. 2. No distinction is made in any of the avoidance counts between Sharestates Investments or Sharestates Intercap, and the Debtors make identical allegations with respect to each in those Counts. Further, although the Proposed Amended Complaint differs from the Original Complaint in that the Debtors are no longer seeking to avoid all "Loans" with the Debtors, the Debtors continue to assert in the Proposed Amended Complaint that the avoidable "transfers" at issue include all mortgages, the Modification, the Forbearance Agreement, and a "Lender Release."[3] Although Counts II, III and IV, as amended, are brought by "all Debtors" against the

---

[3] Each of Counts I through V seeks to avoid or recover some combination of the Sharestates Entities' Loans and Mortgages, the Modification, the Forbearance Agreement, and the "Lender Release." *See, Proposed Amended Complaint,* ¶ 121 (seeking, through Count II, to avoid "the Modification, Forbearance Agreement and Lender Release" as fraudulent transfers under section 548 of the Bankruptcy Code); *Id.* ¶ 126 (seeking, through Count III, to avoid the "Mortgages, Modification, Forbearance Agreement and Lender Release" under the PUFTA and section 544 of the Bankruptcy Code); *Id.* ¶ 139 (seeking, through Count IV, to recover all "Transfers" described in Counts I, II,

Sharestates Entities, there is still no description or detail of any particular transfer made by any specific Debtor to either Sharestates Investments or Sharestates Intercap, the date upon which that transfer was made, the value of that transfer, the form that transfer took, or the method of the transfer. Further, while Counts II and III are predicated on allegations involving the Modification and the Forbearance Agreement, several of the Debtors are not even parties to those agreements. *See Modification,* p. 1 (identifying 1121 Pier Village as the only Debtor signatory to the agreement); *Forbearance Agreement,* p. 1 (identifying Penn Treaty as the only Debtor signatory to the agreement).

Rule 8(a) of the Fed. R. Civ. P. requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. A complaint must clear "two easy-to-clear hurdles" to satisfy Rule 8(a). *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007); *see also, Padilla v. GMAC Mortgage Corp. (In re Padilla),* 389 B.R. 409, 414 (Bankr. E.D. Pa 2008). First, the complaint must contain enough information to give the defendant "fair notice" of the claim. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). The complaint need not make detailed factual allegations but there must be at least some facts supporting each element of the claim. *Iqbal*, 556 U.S. at 678.

Second, the complaint must plausibly suggest that the plaintiff has a right to relief, raising that right above the speculative level. *Concentra*, 496 F.3d at 776; *Padilla,* 389 B.R. at 414. Satisfying this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers . . . a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Put another way, "[t]hreadbare recitals of elements of cause

---

and III).

of action, supported by mere conclusory statements, do not suffice." *Id.* Plaintiffs may not "merely

parrot the statutory language of the claims they are pleading . . . rather than providing some specific

facts to ground those legal claims . . . ." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Here, even were this Court to grant the Motion and authorize the filing of the Proposed

Amended Complaint, the Debtors <u>still</u> <u>fail</u> to satisfy the requirements of Rule 8(a) with respect to

the fraudulent transfer claims, and dismissal is warranted with respect to those claims.

### A. The Debtors Fail to Identify Any Avoidable "Transfers" in Counts II and III of the Complaint.

The purpose of the fraudulent transfer provisions in both the Bankruptcy Code or PUFTA

is to protect creditors by preventing a debtor from placing assets otherwise available to pay debts

out of the reach of those creditors. *Eisenberg v. Pa. State Univ. (In re Lewis),* 574 B.R. 536, 539

(Bankr. E.D. Pa 2017). "At its core, fraudulent transfer is a debt-collection device and not a

revenue generating tool; its mission is to prevent the unjust diminution of the debtor's estate." *Id.*

citing *Finkel v. Polichuk (In re Polichuk)*, 506 B.R. 405, 435 (Bankr. E.D. Pa. 2014). The focus

of the inquiry "must be on the specific transaction the trustee seeks to avoid, *i.e.,* the *quid pro-quo*

exchange between the debtor and the transferee, rather than an analysis of the transaction's overall

value to a debtor as it relates to the welfare of the debtor's business." *Balaber-Strauss v. Sixty-*

*Five Brokers (In re Churchill Mort. Inv. Corp.),* 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000).

In evaluating a fraudulent transfer claim, courts seek to ensure that there is an exchange of

property that is a fair equivalent and "not disproportionately small as compared with the value of

the property or obligation obtained." *Id.* Courts examine "the value of the goods and services

provided, rather than the impact the goods and services had on the bankrupt enterprise." *Carroll*

*v. Stettler,* 941 F. Supp. 2d 572, 582 (E.D. Pa. 2013) (quoting *In re Fin. Federated Title & Trust,*

*Inc.*, 309 F.3d 1325, 1332 (11th Cir. 2002). "[U]nder § 548, in assessing the "value" of property, goods or services provided directly to the debtor, the question is not whether the debtor subjectively benefitted from the property it received; the operative question is whether the property, goods, or services provided had objective value." *McHenry v. Dillworth (In re Caribbean Fuels Am., Inc.)*, 688 F. App'x 890, 894-95 (11th Cir. 2017).

Courts determine the objective value as of the date of the transfers, not on a post-transfer basis that considers whether the purchase was wise or impacted the financial picture of the debtor. *See, e.g., Kipperman v. Onex Corp.*, 411 B.R. 805, 837 (N.D. Ga. 2009) ("Courts will not look with hindsight at a transaction because such an approach could transform fraudulent conveyance law into an insurance policy for creditors."). This is true even when the transaction in question might have ultimately diminished the debtor's bankruptcy estate. Debtors often engage in "improvident purchases or expenditures which have a detrimental effect on creditors and may even be a precipitating cause of bankruptcy." *In re Churchill Mortgage Inv. Corp.*, 256 B.R. at 681. "The fact that transactions may 'exacerbate the harm to creditors and diminish the debtor's estate' from an overall perspective does not mean that the debtor received less than reasonably equivalent value in respect of each particular transaction." *Id.*

Here, Counts II and III of the Proposed Amended Complaint still fail to adequately identify any "transfer" to any Defendant, much less any fraudulent transfer. Instead, the allegations of the Proposed Amended Complaint seek to avoid, in the broadest language possible, "the Mortgages, Modification, Forbearance Agreement" and "Lender Release." *Proposed Amended Complaint*, ¶ 116 (seeking to avoid "the Loan, the Mortgages, Forbearance Agreement, and the Lender Release" pursuant to Section 548 of the Bankruptcy Code), *Id*. ¶ 126 (seeking to avoid the "Mortgages, Modification, Forbearance Agreement…[and] Lender Release" pursuant to the

PUFTA).    Notwithstanding the arguments made and legal authority cited in the Motions to

Dismiss, to which the Debtors provided <u>no response</u>, the Proposed Amended Complaint contains

<u>no</u> factual allegation to support Counts II and III which reference the date of the transfer(s) the

Debtors seek to avoid, the amount of the transfer(s), the name of the transferor, or the name of the

transferee – in essence the Proposed Amended Complaint lacks any  "who, what, when, where or

how.  These failures alone warrant dismissal of the claims."  *See Girerum v. Glick, et al. (In re*

*Glick),* 568 B.R. 634, 670 (Bankr. N.D. Ill. 2017) (holding that the pleading standards of Rule 9(b)

applies to fraudulent transfer claims, regardless of whether the claim is based on actual or

constructive fraud), *citing General Electric Capital Corp. v. Lease Resolution Corp.* 128 F.3d

1074, 1079 (7th Cir. 1997);. *Pricaspian Dev. Corp. v. Martucci,* 759 Fed. Appx. 131, 135 (3rd Cir.

2019) ("Federal Rule of Civil Procedure 9(b)'s particularity requirement applies to plaintiffs'

claims under the Uniform Fraudulent Transfer Act.").

Consistent with this overall lack of specificity, Counts II and III are made against

"Sharestates" – which is defined by the Debtors to include both Sharestates Investments and

Sharestates Intercap – and it is unclear from the allegations of the Complaint whether Sharestates

Investments, Sharestates Intercap, or both, received the alleged fraudulent "transfers" from the

Debtors.  Despite the fact that this deficiency was identified in the Motions to Dismiss, the

Proposed Amended Complaint does not make any attempt to correct this deficiency.

Another consequence of the Debtors' failure to identify the alleged fraudulent transfers

with any specificity is that it becomes impossible for Defendants or this Court to determine if those

alleged "transfers" are avoidable under the applicable law or if they are outside the recovery period.

By way of example, Section 548 of the Bankruptcy Code only permits avoidance of transfers

within two years of the Petition Date, yet the Proposed Amended Complaint confirms that the

Sharestates Entities were making loans to the Debtors outside that window. Thus, it is almost

certain that some of "mortgages" the Debtors seek to avoid are outside any avoidance period under

Section 548, but the extent to which this is true cannot be ascertained by the Proposed Amended

Complaint because of the lack of specificity regarding any of the transfers.

Given the foregoing, permitting the Debtors to file the Proposed Amended Complaint

would be futile with respect to Counts II, III and IV.    Even were the amendment allowed, the

Debtors still have not stated valid claims with respect to those counts.

## III.    THE COURT SHOULD DISMISS ALL TORT AND CONTRACT CLAIMS BECAUSE OF THE MODIFICATION AND FORBEARANCE AGREEMENT.

The Court should dismiss Count V (equitable subordination), Count VI (breach of

contract/breach of duty of good faith and fair dealing), Count VII (fraud in the inducement), and

Count VIII (fraud) because of the releases that are contained in the agreements attached to the

Proposed Amended Complaint as Exhibits "B" and "C," and the express representation in the

Forbearance Agreement that no claims existed as of August 2020.

A release is an affirmative defense that must be asserted in a responsive pleading. *Fed. R.

Civ. P. 8(c).*  The law of the Third Circuit, however, permits a party to submit a defense by motion

if it is apparent on the face of the complaint that no development of the record is necessary.

*Rycoline Products, Inc. v. C & W Unlimited,* 109 F. 3d 883, 886 (3d Cir. 1997).  Here, like *PPG

Indus., Inc. v. Generon IGS, Inc.,* 760 F. Supp. 2d 520, 525 (W.D. Pa 2011), the Court considered

a release that was attached to the complaint at the motion to dismiss stage.

The enforceability of the agreements attached to the First Amended Complaint are

determined in accordance with contract law.   It is well settled that for an enforceable contract to

exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same

thing, as evidenced by an offer and its acceptance." *Lal v. Amerquest Mortg. Co.,* 2004 PA Super 302, ¶ 11, 858 A.2d 119, 123. This is basic contract law.

The consideration for the Forbearance Agreement is set forth on its face. The Debtors admitted that all nineteen loans were in default at the time the Forbearance Agreement was negotiated and executed.[4] Moreover, the Forbearance Agreement sets forth that, in consideration for those Debtors and Guarantors executing it, Debtors and Guarantors would receive value including:

1. **Forbearance**.  Sharestates and Intercap agree to forbear from exercising their respective rights and remedies under the Loan Documents during the applicable period commencing on the execution of this Forbearance Agreement and ending on the earlier of (a) September 1, 2020 or (b) the date on which any terminating event or default occurs;

2. **Payment Deferral**.  Sharestates and Intercap agree to defer the outstanding interest payments on Amended Notes 1-9 and Notes 10-19 for the months of June 2020, July 2020 and August 2020 ("Accrued Interest").  The Accrued Interest shall be due and payable at the time of the acceleration of the amount due or payoff.

3. **Maturity Extension**.  Sharestates extends the Maturity Dates on Notes 10 through 19 from June 30, 2020 to February 28, 2021, and on Notes 1 through 9 to February 28,

---

[4] The Forbearance Agreement sets forth:  "**WHEREAS**, [Penn Treaty], Mazor and Halimi admit, warrant and represent that they have defaulted on their obligations to Sharestates by failing to satisfy the balances due by the maturity dates for the loans secured by Units 10 through 19, and by failing to make the monthly interest payments for the months of June and July 2020 and owe the fund due under Notes 10 through Note 19 thereof as set forth herein above and admit, warrant and represented that Lender is entitled to exercise its rights and remedies under the Loan Documents" and "**WHEREAS**, [Penn Treaty], Mazor and Halimi admit, warrant and represent that they have defaulted on their obligations to [Sharestates Intercap] for the loans secured by Units 1 through 9 by failing to make the monthly interest payments for the months of June and July 2020 and owe the funds due under Notes 1 through Note 9 thereof as set forth herein above and admit, warrant and represent that Lender is entitled to exercise its rights and remedies under the Loan Documents."

2021, at which time all amounts due shall be due and payable without further extension.

*Forbearance Agreement,* at §§ 2-4 (First Amended Complaint at Ex. "C").  As the Court is keenly

aware, when a creditor gives a defaulting debtor extra time to make payments and a promise not

to exercise its rights, it gives that debtor consideration. *Third Nat ' l Bank & Tr. Co. v. Rodgers*,

330 Pa. 523, 526, 198 A. 320, 321 (1938) (stating that the promise to forbear from exercising a

legal right is consideration); *Cardamone v. Univ. of Pittsburgh*, 253 Pa. Super. 65, 72 n.6, 384

A.2d 1228, 1232 (1978) (holding that "valid consideration confers a benefit upon the promisor or

causes a detriment to the promisee and must be an act, forbearance, or return promise bargained

for and given in exchange for the original promise).

Here, pursuant to the Modification, in or about August of 2020, nine months prior to the

commencement of this proceeding, the parties reached a settlement or a meeting of the minds.

Among other things, the parties agreed to the following:

SECTION 5.  RELEASE OF LENDER

Section 5.1.    Borrower and/or Guarantors, and all of their respective heirs,
personal representatives, predecessors, successors, and assigns (individually and
collectively, the "*Releasors*"), hereby fully release, remise, and forever discharge
Lender, its holding company  and all other affiliates, subsidiaries and predecessors
of Lender, and all past and present officers, directors, agents, employees, servants,
partners, shareholders, attorneys, and managers of Lender ("Lender Released
Parties"), for, from, and against any and all claims, counterclaims, liens, demands,
causes of action, controversies, offsets, obligations, losses, damages, and liabilities
of every kind and character whatsoever, including without limitation any action,
omission, misrepresentation, or other basis of liability founded either in tort or
contract and the duties arising thereunder, that the Releasors, or any one or more of
them, has had in the past, now has, whether known or unknown, whether asserted
or unasserted, by reason of any matter, cause, or thing set forth in, relating to, or
arising out of, in any way connected with or resulting from this Agreement or the
Loan Documents, and any documents related to the Loan Documents or any other
Loan Documents or transactions between Borrower and/or Guarantors and lender
related parties.  This release provision is not intended to release the Lender from
any obligations or claims relating to this Modification or any for any claims arising
after the execution of this Modification.

*Modification* §5.1 (First Amended Complaint, Ex. "B").

   In addition, the Forbearance Agreement contains the following provisions:

   **9.     No Defenses.**  Borrower and Guarantors hereby confirm and affirm that, as
of the Effective Date, there are no existing defenses, claims, counterclaims, or
rights of recoupment or set-off against Sharestates, Intercap or any affiliated
lenders, holding companies or subsidiaries in connection with the negotiation,
preparation, execution, performance, or any other matters relating to this
Agreement or the Loan Documents.    Borrower and/or Guarantors further
acknowledge and agree that, notwithstanding anything to the contrary set forth in
this Agreement, neither Sharestates nor Intercap have any obligation to further
amend the Loan Documents, or enter into any other instruments, agreements, or
documents regarding any of the same with Borrower and/or Guarantors and that
Sharestates, Intercap or their representatives have not made any agreements with,
or commitments or representations or warranties to, Borrower and/or Guarantors,
either in writing or orally, other than those as expressly stated in this Agreement.

   **9.     No Coercion or Duress.**    Borrower and/or Guarantors each hereby
represent and warrant that they are fully aware of the terms set forth in this
Agreement and have had an opportunity to review this Agreement with an attorney,
and have voluntarily, and without coercion or duress of any kind, entered in this
Agreement intending to be legally bound by its terms.

   **10.     Release of Lenders.**    Borrower and/or Guarantors, and all of their
respective heirs, personal representatives, predecessors, successors, and assigns
(individually and collectively, the "*Releasors*"), hereby fully release, remise, and
forever discharge Sharestates and Intercap, the holding company of each, and all
other affiliates, subsidiaries and predecessors of Sharestates or Intercap, and all past
and present officers, directors, agents, employees, servants, partners, shareholders,
attorneys, and managers of Sharestates or Intercap ("Lender Released Parties"), for,
from, and against any and all claims, counterclaims, liens, demands, causes of
action, controversies, offsets, obligations, losses, damages, and liabilities of every
kind and character whatsoever, including without limitation any action, omission,
misrepresentation, or other basis of liability founded either in tort or contract and
the duties arising thereunder, that the Releasors, or any one or more of them, has
had in the past, now has, whether known or unknown, whether asserted or
unasserted, by reason of any matter, cause, or thing set forth in, relating to, or
arising out of, in any way connected with or resulting from this Agreement or the
Loan Documents, and any documents related to the Loan Documents or any other
Loan Documents or transactions between Borrower and/or Guarantors and lender
related parties.

*Forbearance Agreement* §§ 9-11 (First Amended Complaint at Ex. "C").

   In Pennsylvania, it is well settled that the effect of a release is to be determined by the

ordinary meaning of its language. *Taylor v. Solberg*, 566 Pa. 150, 155, 778 A.2d 664, 667 (2001).

Parties with possible claims may settle their differences upon such terms as are suitable to them.

*Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 329, 561 A.2d 733, 735 (1989). Here, the language

of the Releases is clear and unambiguous. It is in writing. The Debtors were represented in the

negotiation and execution of the Forbearance Agreement and Modification by the same counsel

who filed this proceeding about those contracts. With respect to Penn Treaty and 1121 Pier

Village, clearly, there was a meeting of the minds. The Court should as a matter of law enforce

these clear and unambiguous releases and dismiss all claims against Sharestates as a matter of law.

Further, although all "Debtors" are named as claimants under Counts V, VI, VII and VIII,

the only facts alleged therein appear to be made with respect to Penn Treaty and 1121 Pier Village.

There is no recognition in the Proposed Amended Complaint that the Debtors are separate entities,

with distinct collateral, that each entered into their own loans with the one or more of the

Sharestates Entities at different times and as part of different transactions.[5] The Debtors have not

sought substantive consolidation, and remain distinct legal entities, yet the Proposed Ameneded

Complaint consistently refers to the Debtors on a consolidated basis, and fails to make anything

more than a passing reference to 2626 Frankford, 285 Kingsland, 231 E 123 or 193 Hancock. To

the extent any Debtor other than Penn Treaty or 1121 Pier Village asserts claims under these nine

counts, those claims are not supported by any well-pled fact, and do not meet the requirements of

Fed. R. Civ. P. 8 or 9(b).

Further, notwithstanding the filing of the Motions to Dismiss, and the fact that each of these

deficiencies was set forth in those motions in detail, the Proposed Amended Complaint does

---

[5] To emphasize this point, Count V of the Proposed Amended Complaint refers repeatedly to the "Loan" and the "Project" without recognizing that there were many loans between the Sharestates Entities and the Debtors, each of which encumbered different property or projects, and which were largely independent but for the cross-default provisions.

nothing to address or correct the same.    It identifies no fact that would constitute a basis for

invalidating the releases.  In addition, it is intentionally vague with respect to the timing of any of

the alleged inequitable or wrongful acts to conceal from this Court that they all took place prior to

the execution of the Modification and Forbearance Agreement.    The Debtors had the ability to

respond to the Motions to Dismiss, and affirmatively chose not to do so.  In drafting the Proposed

Amended Complaint the Debtors could have attempted to correct the deficiencies in the Original

Complaint, but failed.  Consequently, granting leave to amend the Original Complaint with respect

to Claims IV through VIII is futile, and should be denied.

## IV.    DEBTORS PROPOSED AMENDED COMPLAINT DOES NOT PLEAD FRAUD WITH PARTICULARITY.

In the Motions to Dismiss, Defendants asserted that the fraud claims set forth in the

Original Complaint must be dismissed because they failed to plead allegations supporting any

fraud claims with sufficient particularity.  In order to comply with Fed. R. Civ. P 9(b) the Debtors

were required to plead with particularity "the circumstances of the alleged fraud in order to place

the defendants on notice of the precise misconduct with which they are charged, and to safeguard

defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial*

*Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786 (3d Cir. 1984), cert. denied, 469

U.S. 1211 (1985).   The Debtors were aware of these deficiencies in the Original Complaint, and

did nothing to correct them in the Proposed Amended Complaint.    In fact, the allegations in

support of Counts II (fraudulent transfer under section 548), III (fraudulent transfer under PUFTA)

and VIII (fraud) are virtually unchanged from the allegations in the Original Complaint.   In light

of the foregoing, any attempt by the Debtors to amend the Original Complaint with respect to their

fraud and fraudulent transfer counts should be denied as futile.

**V.    THE NEW COUNTS SET FORTH IN THE PROPOSED AMENDED COMPLAINT FAIL TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In a final attempt to salvage any viability of the above-captioned adversary action, notwithstanding the Debtors' failure to respond to the Motions to Dismiss, the Proposed Amended Complaint includes three brand new counts, each of which is related to Sharestates' proofs of claim in these bankruptcy cases or the extent and priority of Sharestates' liens against the Debtors' assets. For the reasons set forth below, permitting an amendment of the Original Complaint in order to allege these new counts is both futile and inequitable, and should be denied.

**A.  The Debtors' Count IX (Objection to Proofs of Claim) Should Be Brought as a Motion, Not an Adversary Count.**

In their new Count IX of the Proposed Adversary Complaint, the Debtors seek leave to file objections to each of the proofs of claim filed by Sharestates against the Debtors.   This request is unnecessary, however, because the Debtors are authorized to raise any objections they might have to Sharestates' claims in the main bankruptcy case.  Indeed, it is unorthodox for such an objection to take the form of an adversary action.  *In re Enron Corp.,* 328 B.R. 75,  (Bankr S.D.N.Y. 2005) ("[T]he filing of an objection to a proof of claim is a contested matter, and not an adversary proceeding."), *citing In re Stavriotis,* 977 F.2d 1202 (7th Cir. 1992) ("Ordinarily, the filing of an objection to a proof of claim is a contested matter, not an adversary proceeding.") (internal citations omitted).  Here, there is no benefit to permitting leave to amend the Original Complaint in order to include a claim objection count, since that dispute should instead be filed as an objection in the main bankruptcy case.

In fact, there is another reason why this Court should have concerns about asserting the claims objections in this adversary action.  Characterizing those objections as a "count" in the adversary action may be a strategic play by the Debtors to have them pursued by the Obermayer

Firm, notwithstanding the fact that the Obermayer Firm voluntarily withdrew from representing the Debtors on the eve of the evidentiary hearing on its failure to disclose its pre-petition representation of the Debtors and their principals and whether it was disinterested, as that term is used in section 327(a) of the Bankruptcy Code.

For the reasons set forth in Sharestates' objection the Debtors' application to retain the Obermayer Firm as special counsel in this adversary action, the Obermayer Firm *is not disinterested,* and pursuing claims objections against the Debtors' largest creditor would certainly be characterized as "conducting the case" as that term is used in Section 327(e) of the Bankruptcy Code.  If the Debtors have objections to the information provided by Sharestates in its proofs of claim, they should pursue those objections through their general counsel in the main bankruptcy case – not through the Obermayer Firm in the adversary action.

Furthermore, leave to amend the Original Complaint in order to include a count for claims objections would be futile because there is nothing improper about Sharestates' claims. Sharestates filed proofs of claim in each of the Debtors bankruptcy cases detailing their pre-petition lending relationship with each of the Debtors.  In addition, they identified the balance due under those loans as of the Petition Date, and further detailed the basis for those monetary amounts in documentation attached to each of the claims.   Each rider attached to Sharestates proofs of claim asserts that the contractual documents underlying the loan had not been attached to the proofs of claim because of their volume, but were available upon request to Sharestates counsel.  To date, the Debtors have never made a request that such documents be provided, and their assertion that this should justify disallowance of the claim is disingenuous.

Furthermore, the documents evidencing the loans should already be in the possession of each of the Debtors, and disallowing Sharestates claims for failing to attached documents that the Debtors should already have, many of which are available in the public record, is preposterous.

Finally, the Debtors' allegations that Sharestates' claims should be disallowed because Sharestates failed to attach supporting documentation to support "certain amounts for interest, fees, charges and escrow advances" is also absurd.   In response to discovery served upon Sharestates in contested matters in the main bankruptcy case, Sharestates provided detailed reports and business records supporting the calculations underlying its claim balances.    Again, the Debtors already have the information and documents they allege should have been attached to the proofs of claim, and to seek disallowance of those claims in the adversary action is disingenuous.

For the foregoing reasons, amendment of the Original Complaint should not be allowed in order to assert a count for a claim objection to Sharestates' proofs of claim.

### B.  The Debtors' Counts for Claim Determination/Bifurcation Count and Lien Stripping are Procedurally Improper

The second and third new counts included in the Proposed Amended Complaint are Count X, seeking "determination of secured claim and bifurcation of claim" under section 506(a)(1), and Count XI, seeking to void Sharestates' liens against the Debtors' assets to the extent those claims are unsecured. In support of these claims, the Debtors assert that "to the extent Sharestates has an Allowed Claim, the value of each Debtor's property securing the claim is far below the amount of the claim." *Proposed Amended Complaint,* ¶ 239.   They further assert that "[t]o the extent that Sharestates' claims are unsecured, this Court must enter a judgment voiding the lien upon that Debtor's property." *Id.,* ¶ 243. Claims relating to determination or bifurcation of Sharestates' secured claims, and any forcible stripping of liens associated therewith, should not be included in this adversary action.   Federal Rule of Bankruptcy Procedure 7001 enumerates adversary

proceedings to include: "a proceeding to determine the validity, priority or extent of a lien or other interest in property, **but not a proceeding under Rule 3012**…" *Fed. R. Bankr. P. 7001(2)(emphasis added).*

Rule 3012(a)(1), in turn, specifically sets for the process for determination of the amount of secured claims under Section 506(a) of the Bankruptcy Code. Specifically, it provides that requests for such determinations may be made "…by motion, in a claim objection, or in a plan filed in chapter 12 or chapter 13 case…". *Id.*

Accordingly, granting the Motion to permit amendment of the Original Complaint to include these new Counts X and XI would be futile. Were such claims asserted against Sharestates in the adversary action, Sharestates would assert that they should be dismissed without prejudice on the basis that they are procedurally improper, and such valuation and related impacts on the extent and priority of liens should be addressed in the main bankruptcy case proceedings, by disinterested counsel, in accordance with Federal Rule of Bankruptcy Procedure 3012.

### C.  The Debtors' Surcharge Count is Premature

The final "new" count set forth in the Proposed Amended Complaint seeks to surcharge Sharestates' collateral under Section 506(c) of the Bankruptcy Code. In support thereof, the Debtors refer to construction expenses and fees that the Debtors have not yet incurred, a sale process that had not yet been approved, and other activities and endeavors which the Debtors presently do not have authority from this Court to pursue. *Id.,* ¶¶ 247, 248, 249 (referring to construction expenses that are predicated on as yet unapproved debtor-in-possession financing and sale processes that have not yet begun). In addition, the Debtors make reference to certain rents collected from their properties, which appear to be cash collateral subject to Sharestates' liens

which the Debtors have no authority to use. *Id.,* ¶ 246.

Section 506(c) of the Bankruptcy Code provides an exception to the general rule that the payment of expenses associated with administering a bankruptcy estate, including the administration of assets pledged as collateral, must derive from unencumbered assets. Under section 506(c), a trustee, or Debtor in Possession "may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

Three elements must be satisfied to surcharge collateral under the terms of section 506(c): (i) the expenditure must be necessary; (ii) the amounts expended must be reasonable; and (iii) the secured creditor must benefit from the expense. *See* 4 Collier, *Bankruptcy* ¶ 506.05[6][c], at 506-125 (characterizing the trend in case law to "requir[e] that [an] expenditure … be designed primarily to bestow a benefit on the secured creditor" as a way of "stat[ing] [the] concept" that "care should be taken to distinguish expenses that truly contribute to the preservation or enhancement of the secured creditor's position" from "those that have no such effect"). *See also In re Towne, Inc.*, 536 Fed. App'x 265, 269 (3d Cir. 2013) (affirming bankruptcy court's finding that "the primary benefit of [the attorney's] legal services was to the Debtors … rather than to preservation of the collateral of [the secured creditor]"). Here, other than conclusory allegations, the Debtor has not set forth any facts concerning expenditures that were necessary or reasonable. Moreover, there is no allegation in the Proposed Amended Complaint that the expenses were primarily for the benefit of Defendants.

In addition, the surcharge count is based upon charges that have not yet been expended and sales of collateral that have not yet occurred. Accordingly, the Count XIII of the Proposed

Amended Complaint, if permitted to be filed, would be subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, as premature and not ripe for adjudication. "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (citation omitted). Ripeness can be seen as [a] time dimension[] of standing," asking whether an otherwise adequate injury "that has not yet happened is sufficiently likely to happen." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003). A ripeness analysis assesses whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief. *Id*. at 70 (1st Cir. 2003) (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972)).

The allegations set forth in Count XIII of the Proposed Amended Complaint are based upon speculative expenses that have not yet been incurred and/or are based upon prospective benefits/recoveries to Defendants which have not yet occurred.  It is completely unknown at this time whether Debtor's "expenditures" will benefit Defendants at all, no less primarily benefit Defendant.  For these reasons Count XIII of the Amended Complaint should be dismissed.

Given the foregoing, and the Debtors will suffer no prejudice from a denial of the Motion that prevents them from bringing those premature claims.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Honorable Court deny the Motion and grant such other and further relief as may be appropriate under the circumstances.

Respectfully Submitted,

STARK & STARK, P.C.

Date:   Nov. 1, 2021

By: _____
SCOTT I. UNGER, ESQ.
Attorney I.D. No. 93231
777 Township Line Road, Ste. 120
Yardley, PA 19067-5559
tel. 267.907.9600/fax 267.907.9659
*Attorneys for Defendant,*