IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1121 PIER VILLAGE LLC, | : | Chapter 11 |
| PENN TREATY HOMES LLC, | : | |
| 2626 FRANKFORD LLC, | : | Lead Case No. 21-11466 (ELF) |
| 285 KINGSLAND LLC, | : | |
| 231 E 123 LLC, | : | |
| 193 HANCOCK LLC, | : | |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| 1121 PIER VILLAGE LLC, | : | Chapter 11 |
| PENN TREATY HOMES LLC, | : | |
| 2626 FRANKFORD LLC, | : | |
| 285 KINGSLAND LLC, | : | |
| 231 E 123 LLC, | : | |
| 193 HANCOCK LLC, | : | |
| | : | |
| Plaintiffs, | : | Adversary No. 21-44-elf |
| | : | |
| v. | : | |
| | : | |
| SHARESTATES INTERCAP LINE, | : | |
| LLC, SHARESTATES INVESTMENTS | : | |
| LLC, RAYMOND DAVOODI, RADNI | : | |
| DAVOODI, ALLEN SHAYANFEKR, | : | |
| | : | |
| Defendants. | : | |

**DEBTORS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Debtors 1121 Pier Village LLC, Penn Treaty Homes LLC, 2626 Frankford LLC, 285 Kingsland LLC, 231 E 123 LLC and 193 Hancock LLC (collectively the "Debtors"), by and through their proposed special counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby file this Response in opposition to the deemed motion to dismiss filed by Raymond and Radni Davoodi (the "Davoodis") Sharestates Intercap Line LLC, Sharestates Investments LLC (collectively "Sharestates"), and Allen Shayanfekr ("Shayanfekr", collectively with the Davoodis and Sharestates, the "Defendants") (DI #26) and state as follows:

4836-2523-3148 v1-11/30/21

## I.  INTRODUCTION

The Defendants' Motion seeks dismissal of all counts in the Complaint.[1]

The Motion is mainly premised on a single affirmative defense: Releases given to Sharestates by Pier and Penn Treaty.  Those Releases do not apply to all Debtors, do not release chapter 5 avoidance claims and are themselves avoidable.

Once the issue of the Releases is addressed, the Motion's remaining arguments are threadbare – mere allegations that the Complaint is not well-pled and allegations that processes explicitly permitted by the Bankruptcy Rules are improper.  As discussed extensively below, the Complaint pleads all necessary elements of the challenged claims.  The counts in the Complaint are in conformity with the Bankruptcy Rules and are well-pled.  The Motion must be denied in its entirety.

## II.  PROCEDURAL HISTORY AND BACKGROUND

On May 23, 2021 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), which cases are jointly administered.  No request has been made for the appointment of a trustee or examiner in the Debtors' chapter 11 cases.  The United States Trustee has not appointed an Official Committee of Unsecured Creditors in any of the Debtors' bankruptcy proceedings.

On May 27, 2021 the Debtors filed the complaint commencing <u>1121 Pier Village LLC et al. v. Sharestates Intercap Line LLC et al.</u>, Adversary No. 21-44-elf.  On August 27, 2021, the Defendants filed the Motions.

---

[1] Any capitalized defined terms not defined herein shall have the same meaning as in the Complaint.

The Debtors filed a motion to amend the complaint, to which Sharestates objected. This Court granted the motion by a November 2, 2021 order that substituted the proposed first amended complaint (the "Complaint") as the operative complaint. (DI #27). That order also provided that the objection of Sharestates, Shayanfekr and the Davoodis to the motion to amend (DI #26) would be treated as a motion to dismiss (the "Motion").[2]

### III.     ARGUMENT

**A.     The Releases are Inapplicable or Avoidable**

i.     <u>The Releases Apply Only to Releasing Debtors</u>

Releases are a creature of contract law. A "release is … a species of contract" that "is governed by the same principles of law applicable to other contracts." <u>Schuman v. Gallet, Dreyer & Berkey, L.L.P.</u>, 180 Misc. 2d 485, 487 (N.Y. Co. 1999), *aff'd*, 280 A.D.2d 310 (1st Dept. 2001). A nonparty to a contract is not bound by that contract.

The Releases at issue here were part of a Modification executed by Pier and a Forbearance executed by Penn Treaty. The other four (4) Debtors are not parties to either contract and cannot be bound by the Releases.

ii.     <u>The Releases Cannot Release Chapter 5 Claims</u>

"A bankruptcy trustee's causes of action to recover fraudulent conveyances and preferential transfers, are independent of, and separate from, prepetition causes of action possessed by the debtor outside of bankruptcy. These actions arise after the petition date, and therefore are not themselves property of the estate." <u>In Guttman v. Fabian (In re Fabian)</u>, 458 B.R. 235

---

[2] The order further provided that the Debtors must respond to any pleading filed by Atlantis. Atlantis filed a response on November 15, 2021 accurately noting that Atlantis is no longer a party. (DI #29). That pleading merely incorporates the grounds raised in the deemed Motion to dismiss and requires no separate response. (DI #26)

3

4836-2523-3148 v1-11/30/21

(Bankr.D.Md.2011). These actions are property of the trustee or debtor-in-possession, and any recovery on a chapter 5 cause of action is estate property for the benefit of all creditors. 11 U.S.C. §541(a)(3), (4).

Because of their different origin, chapter 5 claims cannot "be confused with the separate authority of a trustee or debtor in possession to pursue the prepetition debtor's causes of action that become property of the estate upon the filing of the bankruptcy petition." Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics), 226 F.3d 237, 243 (3d Cir. 2000). Prepetition causes of action may be released by a debtor prepetition, but Code-created causes of action cannot because they fundamentally do not belong to the prepetition debtor. In re Upper Crust, LLC, 554 B.R. 23, 34 (Bankr. D. Mass. 2016).

The chapter 5 claims asserted in Counts I, II, III and IV of the Complaint were not released by the Releases because they belonged to the Debtors-in-Possession. The Releases are not an affirmative defense to these claims.

### iii.   The Releases Are Avoidable

The Complaint asserts claims in Counts II and III to avoid the Releases pursuant to 11 U.S.C. §§ 544, 548 and PUVTA. These federal and state laws permit the Debtors to avoid transfers made while insolvent if the Debtors did not receive reasonably equivalent value in exchange.

A prepetition cause of action is property of the estate. In re e2 Commc'ns, Inc., 320 B.R. 849, 855 (Bankr. N.D. Tex. 2004); See, e.g., Wischan v. Adler (In re Wischan), 77 F.3d 875, 877 (5th Cir.1996) (stating that pre-petition causes of action are property of the estate); Am. Nat'l Bank of Austin v. Mortgage Am. (In re Mortgage Am. Corp.), 714 F.2d 1266, 1277 (5th Cir.1983) (stating that a state cause of action is property of the estate "within the meaning of section 541(a)(1) of the Code").

4

"Common sense suggests that a release of claims is a "transfer" of property—*i.e.,* a method of "disposing of or parting with" property, as the releasing party gives up the right to assert the claims in the future."  In re e2 Commc'ns, Inc., 320 B.R. at 856.  Every court to address this question has held similarly.  Chiasson v. Strachan Shipping Co. (In re Massan Shipping Indus.), 272 B.R. 625, 630 (E.D.La.2001); First Trust Nat'l Ass'n v. Am. Nat'l Bank & Trust Co. (In re Adventist Living Ctrs., Inc.), 174 B.R. 505, 517 (Bankr.N.D.Ill.1994); In re NuMed Home Health Care, Inc., 326 B.R. 859, 865 (Bankr. M.D. Fla. 2005) (Claim to avoid release of causes of action survived Rule 12(b)(6) challenge where complaint pled insolvency and lack of reasonably equivalent value).

Determination of "reasonably equivalent value" under § 548(a)(1)(B) is a two-step process.  Anand v. Nat'l Republic Bank of Chi., 239 B.R. 511, 516–17 (N.D.Ill.1999). "A court must first determine whether the debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up."  In re Knippen, 355 B.R. 710, 726 (Bankr. N.D. Ill. 2006), aff'd sub nom. Knippen v. Grochocinski, 2007 WL 1498906 (N.D. Ill. May 18, 2007) citing Anand v. Nat'l Republic Bank of Chi., 239 B.R. at 517.  The first step addresses whether there was any consideration for a transfer at all.  The second step evaluates the sufficiency of that consideration.  "Indirect benefits" including value provided to affiliates or owners "may be considered as part of the inquiry into reasonably equivalent value in a transaction."  In re Image Worldwide, Ltd., 139 F.3d 574, 579 (7th Cir. 1998).

Absent the Releases, Pier and Penn Treaty possessed a clear right to bring the state law claims in the Complaint.  Within two (2) years of the Petition Date, Pier and Penn Treaty signed Releases which caused them to part with those claims.  The consideration for this exchange is so one-sided that it is difficult to describe what value the Debtors received.  They waived a

5

reimbursement right, surrendered causes of action and entered a new, pro-Sharestates Modified Draw Process.

In exchange they received a short period of time where Sharestates would not attempt to foreclose on Pier, with no such relief for Penn Treaty. This breathing spell was to last from execution of the Forbearance on August 14, 2020 until September 1, 2020 – a total of <u>18 days</u>. See Forbearance at 13. This breathing spell provided the Debtors no value whatsoever; breathing spells only provide value when they give a borrower some real practical potential to make necessary financing or operational changes. At the time, the Debtors' assets were over-encumbered, and Sharestates had complete knowledge of the finances of the Debtors, their affiliates and owners. The Modified Draw Process now required the Debtors to front money Sharestates knew they did not have and could not get. The practical effect of the breathing spell – even without the benefit of hindsight – was merely to delay an inevitable default. The Forbearance and Modification provided the Debtors with insufficient value and effected the transfer of causes of action while the Debtors were insolvent. The Releases may be avoided and cannot constitute an affirmative defense to the claims in the Complaint.

## B.     Count I: Avoidance Under §544

In Count I of the Complaint, the Debtors seek avoidance under 11 U.S.C. §544 of the Pier Village Mortgage – 37 individual mortgages that were recorded prior to the Modification which changed the material terms of the underlying promissory note.

A debtor-in-possession may avoid a transfer if such transfer would be avoidable by a hypothetical lien or execution creditor or a bona fide purchaser of real property. 11 U.S.C. §544(a)(1), (2), (3). The Debtor may avoid the Pier Village Mortgages because a petition-date lienholder would have superior rights, given that the underlying obligation was modified to the

6

detriment of junior creditors. The Debtor may also avoid the Pier Village Mortgages because the recorded mortgages secure a materially-different underlying obligation than that described in the mortgages, and a bona fide purchaser would not have notice of the actual obligation purportedly secured.

                i.        Junior Lienholders Have Superior Priority

Lien priority in Pennsylvania is generally determined by the timing of recordation. 42 Pa.C.S.A. §8141(2) ("Liens against real property shall have priority over … Other mortgages and defeasible deeds in the nature of mortgages, from the time they are left for record.").

Pennsylvania has long recognized that a mortgage secures only the obligations referenced by the recorded document; additional obligations are considered newly-imposed and are subordinate to an intervening interestholder. Ter-Hoven v. Kerns, 2 Pa. 96, 100 (1845) ("there appears to be no good or just reason why [a senior lienholder] should be regarded otherwise, in making future advances, than if he were making advances to the party for the first time.")

Ter-Hoven dealt with discretionary advances under an existing loan document, and the rationale to impose lesser priority is even stronger if the existing terms are fundamentally modified. "If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests..." Restatement (Third) of Property (Mortgages) §7.3 (1997). This principle has been widely adopted. See Burney v. McLaughlin, 63 S.W.3d 223, 230, 232-33 (Mo. Ct. App. 2001) (even where the senior mortgagee was permitted under the terms of the contract to modify its mortgage without notice to or the consent of a junior creditor, where the modifications that increased the interest rate and added appraisal, loan-term extension and renewal fees materially impaired the interests of a junior

7

creditor, the court applied section 7.3 of the Restatement and subordinated the modifications to the junior lienor's interests); <u>Shultis v. Woodstock Land Dev. Assocs.</u>, 188 A.D.2d 234, 594 N.Y.S.2d 890, 892 (1993) (noting long line of New York state cases applying equitable subordination doctrine to hold that modifications to senior mortgage of increased interest rate and loan-term extension required junior lienor's consent); <u>Lennar Ne. Partners v. Buice</u>, 49 Cal.App.4th 1576, 57 Cal. Rptr. 2d 435, 440 (1996) (noting California state court cases applying equitable subordination doctrine to find that modification to a senior deed of trust that increased the interest rate and the principal balance with additional advances substantially impaired the junior lienholder's rights and security, and to hold that priority of senior creditor's modification was to be re-ordered); <u>Fraction v. Jacklily, LLC.</u>, 2021 WL 4037508, at *3 (E.D. Pa. Sept. 3, 2021) (finding no prejudice to junior interestholder under Restatement §7.3).

The Complaint pleads that "Following the recording of the Pier Village Mortgages, Pier entered into the Modification with Sharestates. Sharestates did not record new mortgages consistent with the Modification." Compl. ¶¶ 109, 110. The Modification altered the material terms of a number of loan provisions, including changing the Draw Process to a reimbursement-based model, releasing any existing causes of action related to Sharestates' non-contractual requirement that Pier draw its loans in $5 million tranches and waiving a $2 million reimbursement due to Pier. After the Modification of the underlying loan documents, Pier was required to use a riskier draw process that Sharestates knew was destined to fail. Pier gave up the right to a valid reimbursement it needed to pay present contractors. Pier could not challenge earlier misconduct that Sharestates used to maximize fees and interest charged. These changes increased the likelihood that Pier would default on its debt. The Modification worked solely to

8

the detriment of junior interests, and a junior interestholder has superior rights to the Pier Village Mortgages as a result.

        ii.        Bona Fide Purchasers Had No Notice of the Underlying Obligation

"An innocent purchaser for value, having neither actual nor constructive knowledge of claims of a third party, holds the title acquired free of any such secret equities." Lund v. Heinrich, 410 Pa. 341, 346 (Pa. 1963).

A mortgage is a recorded document that provides constructive notice that a specifically-identified property is encumbered by a lien that secures some identified underlying obligation. Pennsylvania's recording statute provides that "Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim." 21 P.S. §351.

If the underlying obligation is fundamentally altered, consistent with the result in Ter-Hoven, the altered obligations are new obligations. New, unrecorded obligations constitute a new conveyance or contract, and an old mortgage does not provide constructive notice to a purchaser.

A bona fide purchaser is entitled to rely on the public record. Pennsylvania does not impose a requirement on a purchaser to exhaustively review every possible encumbrance hinted at in the public record; that would "place an undue and unrealistic burden on the record examiner to uncover

9

an unrecorded" document impacting title. Mid-State Bank & Tr. Co. v. Globalnet Int'l, Inc., 710 A.2d 1187, 1192 (Pa. Super. Ct. 1998), aff'd, 557 Pa. 555, 735 A.2d 79 (1999).

The Pier Village Mortgages were modified without subsequent recordation into a fundamentally different agreement. The existing Pier Village Mortgages do not put the world on notice of this new agreement and new obligations. A bona fide purchaser would take title free and clear. The Debtors may avoid the Pier Village Mortgages.

### C. Counts II, III and IV: Avoidance Under §§ 544, 548 and PUVTA and Preservation and Recovery Under §§ 550, 551

In Counts II, III and IV, the Debtors seek to avoid the Mortgages, Modification, Forbearance Agreement, and Releases pursuant to 11 U.S.C. §§ 544, 548 and PUVTA, and to preserve and recover the avoided transactions for the benefit of the estate pursuant to 11 U.S.C. §§ 550, 551. Aside from the affirmative defense based on the Releases – addressed above – Defendants raise only one argument against these claims: that these Counts do not identify any "transfer" that can be avoided.

For the purposes of Section 548, a "transfer" is defined by the Bankruptcy Code as "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. §101(54).

Under PUVTA, applicable here pursuant to 11 U.S.C. §544(b), a "transfer" has a substantively-identical definition: it is "Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. The

10

term includes payment of money, release, lease, license and creation of a lien or other encumbrance." 12 Pa.C.S.A. §5101(b).

What constitutes an asset, property or interest therein is determined by state law. Matter of Simpson, 36 F.3d 450 (5th Cir. 1994).

As discussed above, the Releases transferred away certain causes of action. Causes of action are property under Pennsylvania law. In re Harber, 553 B.R. 522, 527 (Bankr. W.D. Pa. 2016) (prepetition claims by debtor are property).

Real property is property under Pennsylvania law. Encumbering that real property with a mortgage is a transfer. United States v. Gleneagles Inv. Co., 565 F. Supp. 556, 576 (M.D. Pa. 1983), aff'd sub nom. United States v. Tabor Ct. Realty Corp., 803 F.2d 1288 (3d Cir. 1986) (grant of a mortgage is a conveyance of property interest under Pennsylvania law). Similarly, increasing the amount of that encumbrance by an amount not provided for in the original loan documents is a new obligation. Ter-Hoven v. Kerns, 2 Pa. 96 (1845). When that new obligation purportedly increases the amount of the associated lien, that increase in the lien amount causes the real property owner to part with a portion of the property's value on account of a new obligation – this is a transfer under PUVTA and the Bankruptcy Code.

The Complaint and its exhibits identify several transfers within the applicable lookback window. All the Pier Village Mortgages were recorded within 2 years of the Petition Date. The Forbearance demonstrates that the unit mortgages against units 1-9 owned by Penn Treaty Homes LLC were modified and re-recorded on February 21, 2020. As discussed above, the Releases effected a transfer on August 14, 2020. Each of these transfers is sufficiently identifiable from the Complaint; Sharestates' only argument is unavailing. Counts II, III and IV cannot be dismissed.

11

### D. Counts V and VI: Equitable Subordination and Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

In Count V, the Debtors seek to equitably subordinate Sharestates' claims. In Count VI, the Debtor seek damages for Sharestates' breaches of the Loan contracts and the breaches of the implied covenant of good faith and fair dealing.

Defendants raise only one argument against these claims: the Releases. As discussed above, the Releases are avoidable or inapplicable. These Counts cannot be dismissed.

### E. Counts VII and VIII: Fraud in the Inducement and Fraud

In Counts VII and VIII, the Debtors seek damages for Defendants' fraud and fraudulent inducement that caused the Debtors to enter and rely upon the Loans.

Under Pennsylvania or New York law, the elements of a claim for fraud – or a fraud that induces a party to enter an agreement – are effectively the same: an intentional material misstatement that induces harmful reliance by plaintiff. See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994), citing, Restatement (Second) of Torts § 525 (1977) ( "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance"); Lama Holding Co. v Smith Barney Inc., 88 NY2d 413, 421 (N.Y Ct. App. 1996) ("a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury").

12

Aside from the alleged defense based on the Releases, the sole argument in the Motion is that these claims are not pled with the requisite particularity pursuant to Fed. R. Civ. P. 9(b). These claims are pled with particularity.

The Complaint pleads that:

> 29. Sharestates expressed interest [in funding the Projects] and assured the Principals that it had the present ability to fund the Debtors' cash needs to complete the Projects and finish funding the Hancock, 123 and Kingsland projects.
> 30. Sharestates, through the Davoodis and others, including Shayanfekr, represented that they had the capacity and ability to timely and fully fund disbursements under the proposed loans for the Projects.
> 31. The Debtors justifiably relied upon the representations by Sharestates, the Davoodis and Shayanfekr, as to the ability to fund fully and timely, the Debtors' obligations at the Projects.
> 32. In reliance on these representations, the Debtors entered into construction financing for each Project.

Compl. ¶29-32.

The Complaint further pleads that Sharestates did not have the ability to fund the Loans it was making (Compl. ¶37), that Sharestates intentionally slowed down disbursements is was unable to make (Compl. ¶50-51), that Defendants forced the Debtors to use a specific title company owned by the Davoodis and Shayanfekr (Compl. ¶46-47) and that this company assessed title charges above the legally-permitted rate (Compl. ¶48). The Complaint pleads that the Defendants sometimes represented that investors – who should have no power to prevent Loan disbursements – were vetoing further disbursements unless the Debtors offered more favorable terms than those in the Loan contracts (Compl. ¶56).

These paragraphs in the Complaint plead false representations by the Defendants – regarding the ability to fund required disbursements, the legality of self-serving title expenses, the power of investors to prevent valid disbursements and the intentional practice of failing to disburse Loan proceeds when due.

13

Each of these representations was material to the Debtors entering into or continuing in the lending relationship. (Compl. ¶199). Defendants knew at all times that these representations were false when made. (Compl. ¶213). Defendants made these representations to induce the Debtors to enter into the lending relationship, take draws from smaller Debtors to contribute to Pier and Penn Treaty and continue to take draws once Defendants knew that would never be able to fund the Projects to completion. (Compl. ¶¶ 31, 32, 61, 77-79). The Debtors justifiably relied upon these misrepresentations at each step. The effect of Defendants' fraudulent inducement of the Loans and fraudulent acts to frustrate disbursements of Loan proceeds was the failure of all Debtors' projects. This eliminated any potential for net profit, when the Debtors expected millions from the completion of their various projects.

These allegations put Defendants on notice of the particular conduct constituting their fraud. These Counts cannot be dismissed.

### F.    Count IX: Objection to Proofs of Claim

In Count IX, the Debtors object to Sharestates' proofs of claims on the basis that they are not self-sustaining and do not demonstrate the propriety of all fees and charges.

Defendants levy several arguments against this Count. They allege that, if certain documents purportedly produced by Sharestates in discovery are considered, all sums are fully-substantiated. It is improper to consider these documents on a motion to dismiss.

Defendants also allege that this Count should be dismissed because filing an objection to a claim as part of an adversary proceeding is "unorthodox." They cite no law saying such a proceeding is improper. Fed. R. Bankr. P. 3007(b) provides that an objecting party "may include the objection in an adversary proceeding." There is no basis in the law or rules to require this Count be brought by motion. This Count cannot be dismissed.

14

### G.    Counts X and XII: Determination of Secured Status and Bifurcation Pursuant to 11 U.S.C. §506(a) and Lien Strip Pursuant to 11 U.S.C. §506(d)

In Counts X and XII, the Debtors seek to bifurcate Sharestates' alleged secured claims and strip the liens to the extent the claims are unsecured. Defendants advance only a procedural argument against Counts X and XII. They allege that claims under §§ 506(a), (d) cannot be brought in an adversary proceeding.

Fed. R. Bankr. P. 7001(2) provides that an adversary proceeding may include any "proceeding to determine the validity, priority, or extent of a lien or other interest in property." Both sections 506(a) and 506(d) address the validity and extent of liens.

"A § 506(a) hearing is an adversary proceeding." In re Linkous, 990 F.2d 160, 165 (4th Cir. 1993). "When a party asks the bankruptcy court to determine the extent of a lien or the value of the collateral forming the basis of the lien, adversary proceedings are required, as contemplated by Bankruptcy Rule 7001(2)2 and Bankruptcy Rule 3012." Wright v. Com. Credit Corp., 178 B.R. 703, 705 (E.D. Va. 1995).[3] The courts that do not follow this adversary requirement hold that a claim under Section 506(a) may be brought as an adversary proceeding or a contested matter – no court holds that it may only be a contested matter. In re Kemp, 391 B.R. 262 (Bankr. D.N.J. 2008).

Lien stripping under §506(d) impacts a deeply important property right: the lien right of a creditor. For that reason, courts require the full formality of an adversary complaint: "a debtor may not cramdown and avoid a secured creditor's lien through the plan confirmation process

---

[3] To the extent that Rule 7001(2) provides that a proceeding under Rule 3012 is not an adversary proceeding, this exclusion does not change the outcome. The Debtors do not propose that this Court will value Sharestates' collateral. That collateral will instead be exposed to a market test pursuant to the Debtors' pending motions to sell. Once that sale closes, this Court will be able to apply a fact – the closing price – to the legal standard laid out in Section 506(a) and determine the amount of the allowed unsecured claim. The Court does not lose the ability to do so simply because a stand-alone valuation proceeding under Rule 3012 is generally brought by motion.

15

without first taking an "affirmative step" such as filing an adversary complaint to avoid the lien or filing an objection to the secured creditor's proof of claim, which, if the objection seeks a determination of the validity, priority or extent of the creditor's lien, will become an adversary proceeding." In re Kressler, 252 B.R. 632, 635 (Bankr. E.D. Pa. 2000) (collecting cases).

These Counts may be brought in an adversary proceeding and cannot be dismissed.

### H.  Count XIII: Surcharge Lien

In Count XIII, the Debtors seek to surcharge Sharestates' collateral for certain fees and expenses that preserved, augmented or disposed of that collateral to Sharestates' benefit. Defendants make only one argument to dismiss this claim, alleging that none of the expenses the Debtors seek to surcharge have yet been incurred.

A debtor may surcharge costs incurred in disposing of a secured creditor's collateral. In re C.S. Assocs., 29 F.3d 903, 906 (3d Cir. 1994). This includes attorney fees sufficiently related to sale efforts, because a sale by the Debtors liquidates property into cash in a market-tested amount without costly foreclosure action by a secured creditor. The Debtors have incurred such fees for the extensive work performed by Debtors' general counsel Bielli & Klauder LLP in pursuing the sale process. The Debtors also seek DIP financing which is budgeted to pay taxes and perform value-improving construction.

The Debtors have incurred surchargeable expenses and will incur more upon this Court's approval of the sale process. This Court cannot be dismissed.

4836-2523-3148 v1-11/30/21

## IV. CONCLUSION

For the reasons set forth above, all challenged counts in the Complaint are well-pled. The Motion to Dismiss must be denied in its entirety.

Respectfully submitted,

Dated:  November 30, 2021         By:    */s/ Edmond George*
Edmond M. George, Esquire (No. 45969)
Michael D. Vagnoni, Esquire (No. 78374)
Turner Falk, Esquire (No. 319066)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA  19102
P:  (215) 665-3000
F:  (215) 665-3165
Email:  edmond.george@obermayer.com
Email:  michael.vagnoni@obermayer.com
Email:  turner.falk@obermayer.com
*Proposed Special Counsel for Debtor*